UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
GERALD DUCHENE, SCOT BERENSON, MARIAN          :
BOCRIS, HUSEIN BRACIC, GABY CUCU, JOSE          :
DEFRAGA, PJETROVIC DAMIR, DANIEL DURDEK        :
OMAR EBIED, NARI FERREIRA, SALAH HELAIL,        :
SEAD HOT, ALI KASMI, LADISLAV KULISEK,           :
FADIL KURMEMOVIC, MARIN MESIC, JOSE            :          06 Civ. 4576 (PAC)
MONGE, EDELMIRO MORENO, SAMMY MUSOVIC,    :
LAURENCE O'NEILL, IVAN PAVICIC, SUCKO           :
PJETROVIC, FIKRET RZDONCIC, FAHRUDIN           :
REDZEPAGIC, ALAETTIN SANGU, VICTOR SIMOES, :
DANIEL SUAREZ, BLAISE YAKSICK, on behalf of       :
Themselves and all others similarly situated,               :
                                                                            :
                                                                            :
                                        Plaintiffs,              :
                                                                            :
    -against-                                                          :
                                                                            :
                                                                            :
MICHAEL L. CETTA, INC., d/b/a SPARKS STEAK       :
HOUSE,                                                                 :
                                                                            :
                                        Defendant.            :
                                                                            :
------------------------------------------------------------------X

# DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO
# PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

FORD & HARRISON LLP

William A. Carmell (WC 7648)
Philip K. Davidoff (PD 7488)
Jeffrey A. Goldstein (JG 5983)
FORD & HARRISON LLP
100 Park Avenue, Suite 2500
New York, New York 10017
(212) 453-5900

*Attorneys for Defendant*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND ........................................................................................... 2

    A.    Sparks Steak House............................................................................................ 2

    B.    Operation of the Restaurant ............................................................................... 2

    C.    Voluntary Tip-Sharing System at Sparks ........................................................... 3

    D.    There Are No Unlawful Participants in the Voluntary Tip-Sharing
           Arrangement ...................................................................................................... 4

           1.    Banquet Manager .................................................................................. 5

           2.    Wine Steward ........................................................................................ 6

           3.    Kitchen Waiters and Kitchen Manager .................................................. 6

           4.    Pastry Chef ............................................................................................ 7

           5.    Bartenders ............................................................................................. 8

ARGUMENT ................................................................................................................. 9

I.     PLAINTIFFS HAVE FAILED TO CARRY THEIR BURDEN OF PROVING
      THAT ALL REQUIRED TESTS UNDER RULE 23 HAVE BEEN MET ...................... 9

    A.    Rule 23 Standard.............................................................................................. 9

    B.    Plaintiffs Have Failed to Show Superiority ...................................................... 9

    C.    Plaintiffs Have Failed to Show Numerosity ..................................................... 11

II.    THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL
      JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS ................................... 14

    A.    Plaintiffs' Claims Under The FLSA and NYLL Involve Fundamentally
           Different Legal Issues ...................................................................................... 14

           1.    Plaintiffs' FLSA Claims ...................................................................... 14

           2.    Plaintiffs' NYLL Claims...................................................................... 15

B.  Plaintiffs Have Failed To Establish The Requisite Elements For Supplemental Jurisdiction .................................................................................. 17

C.  Plaintiffs Cite No Valid Authority Supporting Supplemental Jurisdiction Over A Tip-Sharing Claim Under NYLL ............................................................. 19

CONCLUSION ................................................................................................................. 20

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Ansari v. New York University*,
179 F.R.D. 112 (S.D.N.Y. 1998) ............................................................................12

*Ansoumana v. Gristedes Operating Corp.*,
201 F.R.D. 81 (S.D.N.Y. 2001) ............................................................................19

*Caridad v. Metropolitan-North Commuter RR*,
191 F.3d 283 (2d Cir. 1999)..................................................................................9

*Chan v. Triple 8 Palace, Inc.*,
2006 U.S. Dist. LEXIS 15780 (Mar. 31, 2006, S.D.N.Y.) ....................................16

*Coalition to Defend Affirmative Action v. Granholm*,
2006 U.S. App. LEXIS 32235 (6th Cir. Dec. 29, 2006)........................................18

*Demarco v. Edens*,
390 F.2d 836 (2d Cir. 1968)..................................................................................11

*Edwards v. City of Long Beach*,
2006 U.S. Dist. LEXIS 93141 (C.D. Cal. Dec. 12, 2006) ....................................10

*General Telegraph Co. v. Falcon*,
457 U.S. 147 (1982)..............................................................................................9

*Leuthold v. Destination America, Inc.*,
224 F.R.D. 462 (N.D. Cal. 2004)..........................................................................10

*Moeck v. Gray Supply Corp.*,
2006 U.S. Dist. LEXIS 511 (D.N.J. Jan. 5, 2006) ................................................11

*Moore v. Trippe*,
743 F. Supp. 201 (S.D.N.Y. 1990) ........................................................................13

*Novella v. Westchester County*,
443 F. Supp. 2d 540 (S.D.N.Y. 2006)....................................................................12

*Otto v. Pocono Health System*,
2006 U.S. Dist. LEXIS 78756 (M.D. Pa. Oct. 27, 2006)......................................10

*Railroad Com. of Texas v. Pullman Co.*,
312 U.S. 496 (1941)..............................................................................................18

*Robidoux v. Celani,*
  987 F.2d 931 (2d Cir. 1993)..................................................................11, 12

*Torres v. Gristede's Operating Corp.,*
  2006 U.S. Dist. LEXIS 74039 (Sept. 28, 2006, S.D.N.Y)...........................19

*Trief v. Dun & Bradstreet Corp.,*
  144 F.R.D. 193 (S.D.N.Y. 1992) ................................................................11

*United Mine Workers v. Gibbs,*
  383 U.S. 715 (1966)....................................................................................17

## OTHER STATUTES AND AUTHORITIES

28 U.S.C. § 1367................................................................................... 17-20

29 U.S. C. § 216(b) ..........................................................................1, 10, 11

29 U.S.C. § 203...............................................................................14, 15

Fed. R. Civ. P. Rule 23 ...........................................................1, 9, 10, 11, 18

New York Labor Law § 196-d................................................4, 15, 16, 18

## PRELIMINARY STATEMENT

Defendant Michael L. Cetta, Inc. d/b/a Sparks Steak House ("Sparks") submits this Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification on Plaintiffs' New York Labor Law claim. In their moving papers, Plaintiffs distort the facts and misconstrue New York Labor Law ("NYLL") as it pertains to the lawful voluntary tip-sharing arrangement that exists at Sparks. As set forth herein, Plaintiffs have also failed to carry their burden of proving that all the required tests under Rule 23 of the Federal Rules of Civil Procedure have been met.

Plaintiffs have not only failed to demonstrate that they satisfy the required numerosity element required for class action certification, they have also wholly failed to satisfy the Rule 23(b)(3) requirement that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Indeed, Plaintiffs have curiously ignored a number of recent cases that have declined to certify state wage and hour class actions pursuant to Rule 23(b)(3), holding instead that a currently pending Fair Labor Standards Act ("FLSA") collective action is a superior method for adjudicating the controversy. Moreover, allowing Plaintiffs to proceed with a Rule 23 class action would eviscerate the purpose of the FLSA's opt-in requirement pursuant to Section 216(b).

Finally, contemporaneous adjudication of the federal and state claims will unnecessarily burden the Court and cause confusion for the factfinder because the applicable legal standards and evidence required to prove the federal and state claims are entirely distinct. Accordingly, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' NYLL class action.

# FACTUAL BACKGROUND

### A.    Sparks Steak House

Sparks is a restaurant located in Manhattan, New York that has 687 seats for customers and serves between 500 to 1000 diners per night. (Cetta Dep. T. 9).[1]  Currently, Sparks employs approximately 66 waiters. (Cetta Dep. T. 9).

### B.    Operation of the Restaurant

Sparks utilizes a system whereby the restaurant is broken down into stations of approximately six to seven tables per station. (Zufriategui Dep. T. 16).[2]  There are two waiters per station who are responsible for taking customers' orders.  (Zufriategui Dep. T. 16). Individuals known as "runners" and waiters in the kitchen ("kitchen waiters") charged with the plating of appetizers and desserts and the placing of such items on service carts, have the responsibility of serving the food to customers. (Zufriategui Dep. T. 17-18; Desai Dep. T. 70-75).[3]  A dessert waiter is responsible for placing pre-made desserts onto plates with any relevant garnishment, and then placing those plates onto service carts for delivery into the dining room. (Desai Dep. T. 27-28).  The plating of appetizers and deserts and the placing of such items on carts had, until recently, been a function performed by all dining room waiters and runners. (Zufriategui Dep. T. 73-74, 79-81; Wakim Dep. T. 50-51).[4]  Indeed, the operation at Sparks, a world-renowned restaurant, is fluid and constantly changing with waiters, runners, and kitchen waiters working as a team to deliver outstanding service to diners and with each constantly covering for the other when the need arises. (Zufriategui Dep. T. 30-31).

---

[1]    References to ("Cetta Dep. T. __") are to the deposition transcript of Michael L. Cetta, cited portions of which are attached as Exhibit A to the Affidavit of Jeffrey A. Goldstein (hereinafter "Goldstein Aff."), sworn to January 5, 2007 and submitted with Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification.

[2]    References to ("Zufriategui Dep. T. __") are to the deposition transcript of Carlos Alberto Zufriategui, cited portions of which are attached as Exhibit B to the Goldstein Aff.

[3]    References to ("Desai Dep. T. __") are to the deposition transcript of Shailesh K. Desai, cited portions of which are attached as Exhibit C to the Goldstein Aff.

[4]    References to ("Wakim Dep. T. __") are to the deposition transcript of Ibrahim Wakim, cited portions of which are attached as Exhibit D to the Goldstein Aff.

### C.     Voluntary Tip-Sharing System at Sparks

Contrary to the contention contained in Plaintiffs' moving papers that Sparks "requires its waiters to participate in a tip pool arrangement" (Mov. Br. p. 3),[5] the waiters at Sparks have participated in a voluntary tip-sharing system whereby the waiters pool all of their tips each night and then distribute such tips equally among all members of the pool working the shift in question. (Wakim Dep. T. 36-41; Cetta Dep. T. 33-35: "We [management] don't have anything to do with the cash tips. We try to stay totally clear of it."). Indeed, Plaintiffs Carlos Alberto Zufriategui and Gerald Duchene acknowledged in their depositions that management does not participate in the tip-sharing process. (Zufriategui Dep. T. 55; Duchene Dep. T. 48-49, 75).[6]

As part of the tip-sharing arrangement, those individuals receiving tips share the tips they receive with individuals who are an integral part of customer service, including kitchen waiters, runners, the wine steward, and the dessert waiter. This arrangement is not surprising given the fact that (i) customer service at Sparks is a team effort, (ii) the fluid nature of Sparks' business requires that employees often cover for one another as the need arises, and (iii) waiters taking customer orders have customarily had the responsibilities that are presently handled by many of the employees who are part of the tip-sharing arrangement but who do not directly receive tips from customers. (Zufriategui Dep. T. 31, 73-74, 79-80; Wakim Dep. T. 50-51).

Further underscoring the cooperative nature of the tip-sharing arrangement is the fact that a good number of employees at Sparks have, over their career, rotated through multiple wait staff positions at the restaurant, including positions that Plaintiffs are only now claiming should be excluded from the tip-sharing arrangement. For example, Plaintiff Ibrahim Wakim was employed with Sparks from 1977 to 1988 as a wine steward and kitchen manager, and from 1988 to 2000 solely as a kitchen manager. (Wakim Dep. T. 17-22). Although Plaintiffs are now

---

[5]     References to ("Mov. Br. p. __") are to Plaintiffs' Memorandum of Law in Support of Motion for Class Certification.

[6]     References to ("Duchene Dep. T. __") are to the deposition transcript of Gerald Duchene, cited portions of which are attached as Exhibit E to the Goldstein Aff.

claiming that such positions should be excluded from the tip-sharing arrangement, Mr. Wakim fully participated in the arrangement throughout the aforementioned twenty-three (23) year period without any complaint. (Wakim Dep. T. 17-22).[7] Similarly, Plaintiff Carlos Alberto Zufriategui, now a waiter in the dining room, was a kitchen waiter up until a month ago. (Zufriategui Dep. T. 38-39). Although Plaintiffs are now contending that the kitchen waiter position should have been excluded from the tip-sharing arrangement, Mr. Zufriategui freely and voluntarily received a share of tips under the voluntary tip-sharing arrangement throughout his tenure as kitchen waiter. (Zufriategui Dep. T. 48-49).

### D.    There Are No Unlawful Participants in the Voluntary Tip-Sharing Arrangement

Without citation to any authority, Plaintiffs contend that several categories of individuals unlawfully participate in Sparks' "tip-pool" including the "banquet manager," "wine steward," "three kitchen expediters," "the kitchen manager," "the pastry chef," and "bartenders." (Mov. Br. pp. 4-8). Plaintiffs fail to offer any support for their contention that the aforementioned categories of individuals are not permitted to participate in a tip-sharing arrangement under New York's Labor Law.

Section 196-d of New York's Labor Law permits "the sharing of tips by a waiter with a busboy or similar employee." Section 137-1.5 of the New York Department of Labor's Minimum Wage Order for the Restaurant Industry (the "Order")[8] permits a restaurant employer, like Sparks, to take a "tip allowance" against the minimum wage for "food service workers." Section 137-3.4 of the Order defines "food service worker" as:

> any individual who . . . is primarily engaged in the serving of food or beverages to guests, patrons or customers in the hotel or restaurant industries, including, but not limited to, wait staff, bartenders, captains and bussing

---

[7]    It is worth noting that notwithstanding his twenty-three (23) year participation in the tip-sharing arrangement as a wine steward and kitchen manager, two positions that Plaintiffs are now claiming should be excluded from the tip-sharing arrangement, it was Mr. Wakim himself who was principally responsible for initiating this lawsuit. (Wakim Dep. T. 55-56).

[8]    A copy of the Order is attached as Exhibit F to the Goldstein Aff.

personnel; and who regularly receive tips from such guests, patrons or customers.

(emphasis added).

Indeed, it is important to note that the New York Department of Labor distinguishes between "tip sharing" and "tip pooling," calling them "two entirely different concepts" in a May 18, 2006 Opinion Letter ("Opinion Letter").[9] According to the Department of Labor, tip-pooling occurs when tips are pooled and redistributed among the tipped employees. On the other hand, "[t]ip-sharing occurs when an employee who provides service to a customer shares a portion of his tip with an employee who also provides customer service but who receives no tip, i.e., as when waiters share tips with busboys." (emphasis added).

As demonstrated by the Department of Labor's Order and Opinion Letter, it is customer service, not customer contact or interaction, that determines whether an employee can lawfully participate in a tip-sharing arrangement. Clearly, the tipping arrangement at Sparks falls squarely into the tip-sharing category as defined by the Department of Labor because at Sparks tipped employees are sharing their tips with those employees who provide customer service but who nonetheless do not directly receive tips.

### 1.    Banquet Manager

Although Plaintiffs place much emphasis on the term "banquet manager," a position currently held by Nadilj "Nick" Velic ("Velic"), claiming that as such, Velic is not entitled to participate in Sparks' tip-sharing arrangement (Mov. Br. p. 5), they wholly ignore the fact that Velic holds what amounts to two jobs at Sparks. During the day, Velic is responsible for booking private parties for Sparks. At night, Velic works as a waiter providing service to customers. (Cetta Dep. T. 18-19). It is only with respect to this latter job that Mr. Velic participates in the tip-sharing arrangement. (Cetta Dep. T. 32). During the day (i.e., lunchtime), Velic does not participate in the wait staff tip-sharing arrangement.

---

[9]     A copy of the May 18, 2006 New York Department of Labor Opinion Letter is attached as Exhibit G to the Goldstein Aff.

Plaintiffs' attempt to imbue Velic with managerial authority by reference to his "banquet manager" title is not only misleading but a misrepresentation of the facts. Indeed, Plaintiffs concede that Velic does not have the ability to hire and fire employees. (Duchene Dep. T. 64-65).

**2.    Wine Steward**

Plaintiffs make the same omission with respect to Eugene Bonateau ("Bonateau"). Like Velic, Bonateau has <u>two</u> jobs at Sparks, one as Sparks' "wine buyer" during the day, the other as a waiter at night assisting with the service of wine (among other things) to customers. (Cetta Dep. T. 44-45, 52-53). Indeed, Plaintiff Gerald Duchene confirmed in his deposition that Bonateau assists with the service of wine to customers. (Duchene Dep. T. 44: That Bonateau would tell a customer "[t]hat we are out of the wine that they ordered, would you like something else"; Duchene Dep. T. 46: "If a wine was out, he might bring it up and put it on the table for you").

**3.    Kitchen Waiters and Kitchen Manager**

Plaintiffs argue that the kitchen waiters (termed "kitchen expeditors" by Plaintiffs) and Giuseppe Vetro ("Vetro") (termed the "kitchen manager" by Plaintiffs) are not lawfully entitled to participate in the tip-sharing arrangement because these employees "do not interact with customers." (Mov. Br. p. 6-7). Plaintiffs once again misstate the law and testimony in this case.

Three waiters on any given shift work as kitchen waiters, responsible for plating hot and cold appetizers and placing those plates on carts for runners to take out to the dining room. The kitchen waiters are further charged with teaming with runners to bring food carts into the dining room when busy circumstances require it. (Desai Dep. T. 70-75).

Vetro, a Plaintiff in this case, is responsible for ensuring that each and every table's order is correctly assembled, working with dining room waiters and runners to determine on which service carts food should be placed, and determining the appropriate timing of food delivery to the dining room. (Desai Dep. T. 22-23). True to the fluid nature of customer service

at Sparks, Vetro assists runners and waiters with the delivery of food into the dining room. (Desai Dep. T. 23: "he does go to the dining room early or after. When the cart is ready and the waiter is not there, then he will go out himself to the dining room and deliver the food.").

Even if the kitchen waiters and Vetro had no customer interaction (which is not the case), as noted above, under New York law, interaction with customers is not the applicable standard to determine whether an employee may lawfully be part of a tip-sharing arrangement. Indeed, the evidence is clear that Vetro and the kitchen waiters are all directly engaged in the service of food to customers within the meaning of New York law. The kitchen waiters plate the food and place them on carts for delivery to the dining room, and Vetro coordinates the orders in the kitchen and ensures that they are properly and timely delivered to the customers. This is the very essence of the "service of food to customers." Wakim has expressly acknowledged that the job duties performed by kitchen waiters is "helpful to the waiters in terms of providing better customer service." (Wakim Dep. T. 23).

### 4.    Pastry Chef

In addition to kitchen waiters, Sparks also has a waiter who is charged with receiving dessert orders from dining room waiters, placing pre-made desserts onto plates with any relevant garnishment, and then placing those plates onto carts for delivery into the dining room. (Desai Dep. T. 27-28); (Cetta Dep. T. 57). Currently, such dessert waiter is Fatium Spahija (known as "Lucky"). (Cetta Dep. T. 57). In their moving papers, Plaintiffs attempt to misrepresent Lucky's job functions by calling him a "pastry chef" and claiming that his duties involve "preparing and completing all desserts." (Mov. Br. p. 7). However, contrary to Plaintiffs' assertion, Sparks does not employ a "pastry chef." Rather, it buys all of its desserts from outside vendors. (Cetta Dep. T. 78-79; Wakim Dep. T. 48-49). Lucky's job is primarily related to the "presentation" of the desserts (*i.e.,* plating the desserts) and placing them on service carts.

Furthermore, although Plaintiffs imply that Lucky unlawfully participated in the tip-sharing arrangement because he "has an assistant" and does not "have any interaction" with

7

customers (Mov. Br. p. 8), these two factors clearly are not dispositive as to whether he may lawfully be part of the tip sharing arrangement under New York law.   As noted above, the relevant inquiry is whether Lucky engages in the service of food to customers.   By plating pre-made desserts and delivering such desserts to carts bound for the dining room, Lucky is a vital cog in Sparks' team-oriented customer service wheel, and is an excellent illustration of the premium placed on customer service at the restaurant.   Indeed, prior to Lucky's assumption of these duties, it was the dining room waiters themselves who were responsible for plating each dessert and placing them on service carts.   (Wakim Dep. T. 50-51).

### 5.   Bartenders

Without any support, Plaintiffs make the puzzling contention that the bartenders at Sparks are unlawful participants in Sparks' tip-sharing arrangement.   (Mov. Br. p. 8). However, the New York State Department of Labor's Minimum Wage Order for the Restaurant Industry clearly lists "bartenders" as a category of employees for which employers can take a tip allowance against the minimum wage, and by extension, as a category of employees who can participate in a tip-sharing arrangement.   (Goldstein Aff. Exhibit F §§ 137-1.4 and 137-3.4). Moreover, under the tip-sharing arrangement at Sparks, bartenders receive a fifteen percent (15%) gratuity on drinks that are ordered at the bar but whose drink tabs are transferred to the customers' table bill.   (Desai Dep. T. 35-36).   In the absence of an such an arrangement, whereby such gratuities are "backed out" of the customer's table bill, bartenders would be penalized for the bill transfer, and the non-bartending members of the tip-sharing arrangement unfairly would receive a windfall.

## ARGUMENT

I. **PLAINTIFFS HAVE FAILED TO CARRY THEIR BURDEN OF PROVING THAT ALL REQUIRED TESTS UNDER RULE 23 HAVE BEEN MET**

### A.    Rule 23 Standard

Although Plaintiffs seek relief under Rule 23 of the Federal Rules of Civil Procedure, the standards governing such relief are extremely strict. A class certified under Rule 23 is an "opt-out" class, and as such, class members are deemed to belong to the class unless they affirmatively opt-out of it. Rule 23(c)(2) and 23(d). Plaintiffs bear the burden of establishing, after a "rigorous analysis," that all of the requirements for a class action have been satisfied through evidence and not through unfounded allegations. *See General Tel. Co. v. Falcon,* 457 U.S. 147, 161 (1982); *Caridad v. Metro-North Commuter RR*, 191 F.3d 283, 291 (2d Cir. 1999).

To obtain certification under Rule 23, Plaintiffs must prove at least six different points: There must be "questions of law or fact common to the class" ("commonality"); the claims or defenses of the representative parties must be "typical of the claims or defenses of the class" ('typicality"); the representative parties must "fairly and adequately protect the interests of the class" ("adequacy of representation"); and the class must be "so numerous that joinder of all members is impracticable" ("numerosity"). In addition, because Plaintiffs have invoked Rule 23(b)(3), they must show "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members" ("predominance") and "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy" ("superiority").

### B.    Plaintiffs Have Failed to Show Superiority

Plaintiffs have wholly failed to satisfy the Rule 23(b)(3) requirement that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In what appears to be a trend, a number of federal courts have recently declined

to certify state wage and hour class actions pursuant to Rule 23(b)(3), holding instead that a currently pending FLSA collective action is a superior method for adjudicating the controversy.

For example, in *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462 (N.D. Cal. 2004), after being granted conditional certification of a collective action under the FLSA, the plaintiffs moved to certify a Rule 23(b)(3) class to pursue California wage and hour claims. In rejecting the plaintiffs' motion, the court stated that it did "not believe that certifying a Rule 23 class action is the superior means of adjudicating plaintiffs' claims." *Id.* at 469. The court held that prosecution of the state law claim as part of the FLSA collective action was a superior method for adjudicating the controversy because "the FLSA class action allows individuals to control their participation in this litigation in a far more expeditious fashion than does a Rule 23 class action." *Id.* In making this determination, the court noted:

> the FLSA suit provides a means of participation for individuals who truly wish to join the suit, while requiring no action from those who do not wish to join. By contrast, a Rule 23 class requires that a potential class member take affirmative action not to be bound by the judgment.

*Id.* at 469-470. The court further noted that the opt-in requirement for collective actions under the FLSA is incompatible with the opt-out requirement of Rule 23:

> the policy behind requiring FLSA plaintiffs to opt in to the class would largely be thwarted if a plaintiff were permitted to back door the shoehorning in of unnamed parties through the vehicle of calling upon similar state statutes that lack such an opt-in requirement.

*Id.* at 470. (citation and internal quotations omitted).

A number of recent cases have embraced the *Leuthold* court's reasoning and declined to certify state wage and hour class actions where there is a pending FLSA collective action. *See Edwards v. City of Long Beach*, 2006 U.S. Dist. LEXIS 93141, *17 (C.D. Cal. Dec. 12, 2006) ("allowing both a § 216(b) collective action and a Rule 23 class action to proceed would frustrate the purpose of requiring plaintiffs to affirmatively opt-in to § 216(b) collective actions"); *Otto v. Pocono Health Sys.*, 2006 U.S. Dist LEXIS 78756, *6 (M.D. Pa. Oct. 27, 2006) ("It is clear that Congress labored to create an opt-in scheme when it created Section 216(b) specifically to alleviate the fear that absent individuals would not have their rights litigated

without their input or knowledge. To allow a Section 216(b) opt-in action to proceed accompanied by a Rule 23 opt-out state law class action claim would essentially nullify Congress's intent in crafting Section 216(b) and eviscerate the purpose of Section 216(b)'s opt-in requirement."); *Moeck v. Gray Supply Corp.*, 2006 U.S. Dist. LEXIS 511, *15-*16 (D.N.J. Jan. 5, 2006) ("Allowing Plaintiff Moeck to circumvent the opt-in requirement and bring unnamed parties into federal court by calling upon state statutes similar to the FLSA would undermine Congress's intent to limit these types of claims to collective actions.").

As the current weight of authority amply demonstrates, Plaintiffs' motion for class certification pursuant to Rule 23(b)(3) should be denied because (i) the FLSA collective action is a superior method for adjudicating this controversy, and (ii) allowing Plaintiffs to proceed with a Rule 23 class action would eviscerate the purpose of Section 216(b)'s opt-in requirement.

### C.    Plaintiffs Have Failed to Show Numerosity

Plaintiffs also have not demonstrated that they satisfy the required numerosity element required for class action certification.  Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable."  In making this determination, a court considers "all the circumstances surrounding a case," and the focus is "not on mere numbers." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993); *Demarco v. Edens*, 390 F.2d 836, 845 (2d Cir. 1968) ("courts should not be so rigid as to depend upon mere numbers as a guideline on the practicability of joinder; a determination of practicability should depend upon all the circumstances surrounding a case.").  Despite Plaintiffs' contention, the mere fact that this case involves more than forty plaintiffs is simply not a *per se* showing of numerosity.

Rather, the Court makes a case-by-case review of whether joinder of the potential plaintiffs would "needlessly complicate and hinder efficient resolution of the litigation." *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y. 1992)).  In this case, joinder of the

potential plaintiffs will not unreasonably complicate or hinder the litigation. The parties have already identified each of the potential plaintiffs who may have claims under the NYLL. According to Plaintiffs, the case involves a limited group of approximately 182 current and former waiters who all worked at the same restaurant site. This list of plaintiffs with potential NYLL claims is nearly identical to the list of plaintiffs in the FLSA collective action (to whom the Court has already provided judicial notice of claims). Because the plaintiffs are identifiable, the Court can easily provide them with notice of potential claims under the NYLL, in the same way that the Court did for the FLSA collective action. Because the FLSA collective action already exists, joining the same plaintiffs for the state law claims will be simple.

Moreover, in determining whether a case satisfies the numerosity requirement, courts consider the (1) judicial economy arising from multiple actions, (2) geographic dispersions of class members, (3) financial resources of class members, and (4) ability of complainants to institute individual suits. *See Robidoux*, 987 F.2d at 936. None of these concerns is present in this case. Plaintiffs offer no evidence to suggest a class action is necessary to avoid a multiplicity of redundant lawsuits. It is telling that, other than this lawsuit, no one has sued Sparks for alleged improper tip-sharing. *See Ansari v. New York Univ.*, 179 F.R.D. 112, 115 (S.D.N.Y. 1998) (finding this factor weighs against class certification when no other plaintiffs had sued). It will not be difficult to join all of the prospective class members. *See Novella v. Westchester County*, 443 F. Supp. 2d 540 (S.D.N.Y. 2006) (noting that the test for determining whether class certification will further judicial economy is not simply whether it is more convenient to try the case as a class action, but rather whether it will be difficult to join all of the prospective class members). Indeed, a majority of these individuals have already been joined to the litigation due to their FLSA claims. Thus, regardless of whether the NYLL claims

proceed as a class action or as individual claims joined together, the names and number of plaintiffs will remain almost entirely consistent. Class certification will not further judicial economy concerns.

The lack of geographic dispersion for the plaintiffs in this case also weighs against class certification. Unlike typical class action claims, the potential plaintiffs in this case are not a nationwide group of individuals, and are not even dispersed around the State of New York. Rather, these claims all arose from a single restaurant location in New York, and it is reasonable to assume that the vast majority of potential plaintiffs reside in or near the New York metropolitan area. *See Moore v. Trippe*, 743 F. Supp. 201, 211 (S.D.N.Y. 1990) (finding no geographic dispersion where members all live in "the Metropolitan New York area"). Plaintiffs have not shown that these claims or these plaintiffs involve such a broad geographic scope that it would be difficult for any single plaintiff to join this litigation. Certainly, the high participation of plaintiffs who have already joined the FLSA collective action illustrates this point. Class certification is not necessary due to geographic dispersion concerns.

As to the last two factors, Plaintiffs have not shown that the potential plaintiffs lack the financial resources to institute individual suits. These individuals each claim entitlement to a significant amount of money. They all worked (or work) in a professional and prestigious restaurant environment where they were (or are) well compensated. The collective expenses of this litigation will be shared because Plaintiffs have retained the services of a single law firm. Moreover, the majority of potential plaintiffs have already joined the FLSA collective action on an individual basis. Accordingly, the typical concerns related to numerosity are simply not present in this case. For these reasons, Plaintiffs have not demonstrated the requisite numerosity requirement.

## II.    THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS

In addition to their collective action under the FLSA, Plaintiffs ask this Court to administer and adjudicate a class action based on separate and distinct state law claims. While both the FLSA and NYLL claims generally relate to tip-sharing arrangements, the apparent similarity between the claims ends there. The applicable legal standards and evidence required to prove the claims are profoundly distinct. Indeed, Plaintiffs' NYLL claims involve novel and complex issues of state law, and will significantly predominate over the FLSA claims. Contemporaneous adjudication of the federal and state claims will unnecessarily burden the Court and cause confusion for the factfinder. For each of these reasons, the Court should decline to exercise supplemental jurisdiction.

### A.    Plaintiffs' Claims Under The FLSA and NYLL Involve Fundamentally Different Legal Issues

While Plaintiffs try to create the impression that there are no material differences between their FLSA and NYLL claims, in fact the statutes involve entirely different legal standards, evidentiary requirements and potential remedies. We highlight some of the fundamental differences below.

#### 1.    Plaintiffs' FLSA Claims

Plaintiffs assert that the tip-sharing arrangement at Sparks violates the FLSA. Consequently, they claim entitlement to the amount of the "tip credit" that Sparks applied to their hourly wages. Section 3(m) of the FLSA allows an employer to pay "tipped employees" an hourly rate less than the federal minimum wage by allowing the employer to credit a portion of the actual amount of tips received by the employee against the required minimum wage.[10] *See* 29 U.S.C. § 203(m). The FLSA defines the term "tipped employee" to mean any employee "engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." *See* 29 U.S.C. § 203(t). Federal law allows an employer to establish a "tip pool"

---

[10]    In passing, it should be noted that virtually each and every member of the proposed class received in fact significantly more than the minimum wage dur·ng their employment at Sparks.

among employees who customarily and regularly receive tips. *See* 29 U.S.C. § 203(m). Employees who can participate in a tip pool include employees who provide services such as waiters, bellhops, waitresses, countermen, busboys, and service bartenders, (as opposed to positions such as cooks, janitors and dishwashers). *See* Letter from Dept. of Labor, Wage & Hour Div. (Nov. 4, 1997), 1997 DOLWH LEXIS 55 (1997). Where an employer maintains an improper tip-pooling arrangement, employees subject to the arrangement can recover the amount of the tip credit taken by the employer. This damage calculation is simple: hours worked multiplied by the statutorily-determined tip credit amount.

In short, the issues for adjudication of an FLSA tip credit claim involve: (1) whether the participants in the tip-sharing arrangement involved employees who customarily received tips, (2) whether the employer was entitled to apply a tip credit toward employees' minimum wage, and (3) if necessary, the amount of the tip credit reimbursement to which each plaintiff is entitled.

### 2.    Plaintiffs' NYLL Claims

Seeking to blur the distinction between the federal and state laws, Plaintiffs also claim that the tip-sharing arrangement at Sparks violates the NYLL and that they are similarly entitled to recover the amount of the tip credit (i.e., allowance) taken by the employer. (Mov. Br. p. 4). This is wholly without merit. The liability standard for tip-sharing under state law is entirely different from that under the FLSA, as are the available remedies. Section 196-d of the NYLL addresses tip-sharing arrangements, and states in relevant part:

> No employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee. . . . <u>Nothing in this subdivision shall be construed as affecting the allowances from the minimum wage for gratuities in the amount determined in accordance with the provisions of article nineteen of this chapter . . . nor to the sharing of tips by a waiter with a busboy or similar employee.</u>

(emphasis added).

15

Under state law, an employer may not mandate a tip-pooling arrangement but may mandate a tip-sharing arrangement. *See* New York Department of Labor Tip Appropriation Law Policy Guidelines (Sept. 5, 1972).[11] Under the NYLL, tip-pooling occurs when food service employees intermingle tip earnings which are then redistributed between participants. *Id.* On the other hand, tip-sharing occurs when an employee gives a portion of tips earned to a "busboy or similar employee," such as a hostess, captain, or short-order counter cook, or any other employee who also provides customer service. *Id.* New York courts have not squarely addressed either (1) the distinction between tip-sharing and tip-pooling under the NYLL, and (2) what employees are "busboy or similar employees" for purposes of tip-sharing under § 196-d.

In addition to the different liability standards, the NYLL provides fundamentally distinct remedies from the FLSA for claims of improper tip-sharing. Most significantly, under the NYLL (unlike the FLSA), there is no relation between a tip-sharing arrangement and a tip allowance, and an employer remains entitled to a tip allowance even if a tip-sharing arrangement is found to violate state law. *See* NYLL, § 196-d ("Nothing in this subdivision shall be construed as affecting the allowances from the minimum wage for gratuities in the amount determined in accordance with the provisions of article nineteen of this chapter . . . nor to the sharing of tips by a waiter with a busboy or similar employee"); *Chan v. Triple 8 Palace, Inc.*, 2006 U.S. Dist. LEXIS 15780, *9, *54 (Mar. 31, 2006, S.D.N.Y.) (Noting that, unlike the FLSA, the tip credit provision under New York law exists independently of the tip-sharing requirements).

Thus, the remedy for an invalid tip-sharing arrangement does not include recoupment of a statutorily-determined tip credit amount. Instead, if successful, the NYLL allows a plaintiff to recover the portion of tips that were inappropriately deducted. This involves a complex, fact-intensive determination. Each plaintiff must present evidence of the amount of tips that he or she contributed to the tip-sharing arrangement each day, and the number of other

---

[11]    A copy of the September 5, 1972 New York Department of Labor Tip Appropriation Law Policy Guidelines is attached as Exhibit H to the Goldstein Aff.

participants in the arrangement on each given day. From this information, a court determines the proper amount of the reimbursement due for a particular day. Potentially, the court must make similar calculations for each workday, going backwards for the entire six year limitations period, for each member of the proposed class.

In short, the issues for adjudication of NYLL claims for improper tip-sharing include: (1) whether the tip-sharing plan included "busboys or similar employees," (as opposed to employees in professions that do not customarily receive tips under the FLSA), and (2) if necessary, the amount of unpaid tips that need to be returned to each Plaintiff for each workday within the limitations period (based on individualized calculations).

**B.      Plaintiffs Have Failed To Establish The Requisite Elements For Supplemental Jurisdiction**

In light of the fundamental distinctions between the FLSA and NYLL identified above, Plaintiffs have failed to establish that the Court should exercise supplemental jurisdiction in this action. Supplemental jurisdiction is appropriate only where the state law claims are "so related to [pending federal] claims ... that they form part of the same case or controversy ... ." 28 U.S.C. § 1367(a). This required relatedness may exist where the federal and state law claims "derive from a common nucleus of operative fact," such that the parties "would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

Moreover, despite related factual content, a court may refuse to exercise supplemental jurisdiction over a state law claim where (1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the federal law claim, or (3) other compelling reasons for declining jurisdiction exist. *See* 28 U.S.C. § 1367(c). Based on the conflicting legal standards between the relevant FLSA and NYLL provisions, the Court should not exercise supplemental jurisdiction over Plaintiffs' state law claims.

Defendant submits that the FLSA and NYLL claims in this case are not so interrelated that they form part of the same case or controversy. *See* 28 U.S.C. § 1367. As

identified above, while both the federal and state statutes address issues of tip-sharing, they apply significantly different legal standards and allow for different remedies, which, if considered together, would substantially alter the course of this litigation. In this regard, tip-sharing cases are unlike other wage and hour issues where federal and state laws are nearly identical (such as payment of overtime or misclassification of exempt status cases). The claims are not based upon identical facts, and success on one claim does not guarantee success on the other. Indeed, the NYLL claims will require a significant amount of separate discovery and evidence concerning liability and damage issues that are entirely unrelated to Plaintiffs' FLSA claims. For each of these reasons, Plaintiffs have failed to show that the FLSA and NYLL claims involve the same case or controversy such that the Court should exercise supplemental jurisdiction.

Even if Plaintiffs' claims under the FLSA and NYLL could be deemed to be a part of the same case or controversy, the Court should still forego supplemental jurisdiction. A federal court may decline to exercise jurisdiction where the state law claims involve a novel or complex issue of state law. *See* 28 U.S.C. § 1367(c)(1). As discussed above, this case involves legal issues that New York courts have not directly addressed. Indeed, the case law interpreting NYLL § 196-d is minimal. This Court is without effective guidance to interpret what the New York legislature and agencies intended by the apparent distinction between tip-pooling and tip-sharing. Similarly, as to tip-sharing, this Court will likely forge new legal territory under New York law in determining what employees are included as "busboys and similar employees" under NYLL § 196-d. These issues of first impression are best left to New York courts to address, particularly with respect to a wide-reaching class of plaintiffs. *See Coalition to Defend Affirmative Action v. Granholm*, 2006 U.S. App. LEXIS 32235, *20 (6th Cir. Dec. 29, 2006) (citing to *Railroad Com. of Texas v. Pullman Co.*, 312 U.S. 496, 501 (1941) for the proposition that "[s]tate courts and state agencies . . . generally get the first (and ultimately the last) crack at interpreting a state law-which is why uncertainty over the meaning of a state law often counsels in favor of a federal court staying its hand until the state courts have had a chance to construe the law.").

The Court should also decline supplemental jurisdiction because the state law claims will predominate in this action, and because other compelling reasons to decline jurisdiction exist. *See* 28 U.S.C. § 1367(c)(2)-(3). As discussed above, trial in this case will necessarily involve weeks of specialized testimony related to each plaintiff's alleged damages claims under the NYLL. This testimony is irrelevant and unnecessary for disposition of the FLSA claims. If the Court accepts jurisdiction over the state law class action, trial in this matter will be prolonged. Because this trial time will be devoted primarily to the state law claims, the state law claims will predominate the action. Combining the FLSA and NYLL legal claims will only delay proceedings and cause unnecessary confusion for the factfinder. Each of these reasons is a compelling reason for the Court to deny Plaintiffs' request for supplemental jurisdiction.

### C.    Plaintiffs Cite No Valid Authority Supporting Supplemental Jurisdiction Over A Tip-Sharing Claim Under NYLL

Plaintiffs' Memorandum of Law in Support of Class Certification identifies no case in which a federal court has exercised supplemental jurisdiction over a class action involving claims of improper tip-sharing under NYLL. Rather, Plaintiffs rely upon cases that involve basic minimum wage and overtime issues where the federal and state laws essentially mirror one another. Of course, these cases are factually distinguishable.

In *Ansoumana v. Gristedes Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001), the plaintiffs worked as purported independent contractors in supermarkets and drugstores. *Id.* at 83. The issues in the case involved whether the plaintiffs were indeed independent contractors, and whether they were entitled to minimum wage and overtime under the FLSA and parallel provisions of the NYLL. *Id.* In deciding to exercise supplemental jurisdiction, the court noted that "the state law claims are substantially similar to the federal law claims, and it is likely that they will either succeed or fail together." *Id.* at 95. Similarly, in *Torres v. Gristede's Operating Corp.*, 2006 U.S. Dist. LEXIS 74039 (Sept. 28, 2006, S.D.N.Y), the plaintiffs were supermarket managers and co-managers who challenged their exempt status and claimed entitlement to

unpaid overtime under the FLSA and NYLL. *Id.* at *4-7. Both of these cases involved parallel state and federal claims based upon identical facts. By contrast, Plaintiffs' FLSA and NYLL claims are based on different legal standards and involve wholly distinct factual issues, testimony and analysis.

For the reasons described above, supplemental jurisdiction over the NYLL claims in this case is inappropriate, and the Court should decline Plaintiffs' request for it to accept responsibility for the adjudication of a separate state law class action.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification should be denied in its entirety.

Dated: New York, New York
        January 5, 2007

                              FORD & HARRISON LLP

                              By: _____
                                    William A. Carmell (WC 7648)
                                    Philip K. Davidoff (PD 7488)
                                    Jeffrey A. Goldstein (JG 5983)

                              100 Park Avenue, Suite 2500
                              New York, NY 10017
                              Tel. (212) 453-5900

                              *Attorneys for Defendant*