Louis Pechman (LP-6395)
Berke-Weiss & Pechman LLP
488 Madison Avenue, 11th Floor
New York, New York 10022
(212) 583-9500
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

GERALD DUCHENE, et al.,

                  Plaintiffs,

    -against-

    06 Civ. 4576 (PAC) (GWG)

MICHAEL CETTA, INC. d/b/a SPARKS
STEAK HOUSE, and MICHAEL CETTA,

    ECF CASE

                  Defendants.
-------------------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. iii

INTRODUCTION ........................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ...........................................2

    A. Procedural History .............................................................................2

    B. Discovery ..........................................................................................4

    C. Settlement Negotiations .....................................................................4

SUMMARY OF THE SETTLEMENT TERMS...................................................6

    A. The Settlement Fund ..........................................................................6

    B. Eligible Employees.............................................................................6

    C. Allocation Formula ............................................................................6

    D. Attorneys' Fees and Litigation Costs ...................................................7

    E. Service Payments................................................................................8

    F. Releases ............................................................................................8

CLASS ACTION SETTLEMENT PROCEDURE................................................8

ARGUMENT .............................................................................................10

THIS COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT .................10

    A. Role of the Court...............................................................................10

    B. Preliminary Approval of the Settlement is Appropriate ....................10

        a. The Settlement is Fair, Reasonable, and Adequate ..................12

            i. Litigation Through Trial Would be Complex, Costly and Long (*Grinnell* Factor 1) .....................................13

            ii. The Reaction of the Class Has Been Positive (*Grinnell* Factor 2) ......................................................14

iii. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3) ............................................................................... 14

iv. Plaintiffs Would Face Real Risks if the Case Proceeded to Trial (*Grinnell* Factors 4 and 5) ........................... 15

v. Establishing a Class and Maintaining It Through Trial (*Grinnell* Factor 6) .............................................. 16

vi. Defendants' Ability to Withstand a Greater Judgment is Not Clear (*Grinnell* Factor 7) ............................... 16

vii. The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ...................................... 17

b. The Settlement Contains No Obvious Deficiencies ................................ 18

C. The Proposed Class Notice is Appropriate ........................................................ 20

a. The Proposed Class Notice Satisfies Due Process .................................... 20

b. The Notice and the Award Distribution Process Are Appropriate ............................................................................... 20

D. The FLSA Settlement Should Be Approved ..................................................... 21

CONCLUSION ............................................................................................................. 22

## TABLE OF AUTHORITIES

**CASES**

*Adair v. Bristol Technology Sys.*, No. 97-CV-5874 (RWS),
  1999 U.S. Dist. LEXIS 17627 (S.D.N.Y. Nov. 12, 1999) ............................................... 19

*Brooks v. Am. Export Indus., Inc.*, No. 71-CV-5128 (LWP),
  1977 U.S. Dist. LEXIS 17313 (S.D.N.Y. Feb. 17, 1977) ................................................ 18

*Cagan v. Anchor Sav. Bank FSB*, No. 88-CV-3024 (CPS),
  1990 U.S. Dist. LEXIS 11450 (E.D.N.Y. May17, 1990) ................................................ 17

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ................................................................................. *passim*

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005) ........................................................... 11, 16, 18

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1988) ................................................................................ 11

*Hoffmann v. Sbarro, Inc.*,
  982 F. Supp. 249 (S.D.N.Y. 1997) .......................................................................... 21

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) ..................................................... 13, 14, 15, 16, 18

*In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litigation)*,
  607 F. Supp. 1312 (S.D.N.Y. 1985) ......................................................................... 17

*In re Blech Sec. Litig.*, No. 94-CV-7696 (RWS),
  2002 U.S. Dist. LEXIS 23170 (S.D.N.Y. Dec. 4, 2002) ............................................... 19

*In re Crazy Eddie*,
  824 F. Supp. 320 (E.D.N.Y. 1993) .......................................................................... 19

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
  No. 05-CV-10240 (CM), 2007 U.S. Dist. LEXIS 57918
  (S.D.N.Y. July 27, 2007) ...................................................................................... 12

*In re Initial Pub. Offering*,
  226 F.R.D. 186 (S.D.N.Y. 2005) ............................................................................ 10

*In re Michael Milken & Assoc. Sec. Litig.*,
  150 F.R.D. 46 (S.D.N.Y. 1997) ........................................................................ 10, 20

*In re Nasdaq Market-Makers Antitrust Litigation*,
  176 F.R.D. 99 (S.D.N.Y. 1997) .............................................................................. 10

*In re PaineWebber Ltd. Pshps. Litig.,*
      147 F.3d 132 (2d Cir. N.Y. 1998) .................................................................................11

*In re Telik, Inc. Sec. Litig.,*
      576 F. Supp. 2d 570 (S.D.N.Y. 2008) .........................................................................11

*In re Top Tankers, Inc. Sec. Litig.,* No. 06-CV-13761 (CM),
      2008 U.S. Dist. LEXIS 58106 (S.D.N.Y. July 31, 2008).............................................12

*In re Traffic Executive Ass'n,*
      627 F.2d 631 (2d Cir. 1980) .........................................................................................11

*International Union of Elec., Elec., Salaried, Mach. & Furniture Workers v. Unisys Corp.,*
      858 F. Supp. 1243 (E.D.N.Y. 1994) ...........................................................................12

*Joel A. v. Giuliani,*
      218 F.3d 132 (2d Cir. 2000) .........................................................................................18

*Klein ex rel. Ira v. PDG Remediation, Inc.,* No. 95-CV-4954 (DAB),
      1999 U.S. Dist. LEXIS 650 (S.D.N.Y. Jan. 26, 1999) .................................................19

*Lynn's Food Stores, Inc. v. United States,*
      679 F.2d 1350 (11th Cir. 1982) ...................................................................................21

*McKenna v. Champion Int'l Corp.,*
      747 F.2d 1211 (8th Cir. 1984) .....................................................................................21

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar,*
      No. 06-CV-4270 (PAC), 2009 U.S. Dist. LEXIS 27899
      (S.D.N.Y. Mar. 31, 2009) ...................................................................................17, 20

*Newman v. Stein,*
      464 F. 2d 689 (2d Cir. 1972) .......................................................................................18

*Sheppard v. Consolidated Edison Co. of New York, Inc.,*
      No. 94-CV-0403 (JG), 2002 U.S. Dist. LEXIS 16314
      (E.D.N.Y. Aug. 1, 2002) .............................................................................................20

*Stefaniak v. HSBC Bank USA, N.A.,* No. 05-CV-720 (WMS),
      2008 U.S. Dist. LEXIS 53872 (W.D.N.Y. June 28, 2008) ...........................................19

*Strougo v. Bassini,*
      258 F. Supp. 2d 254 (S.D.N.Y. 2003) .........................................................................19

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.,* No. 01-CV-11814 (MP),
      2004 U.S. Dist LEXIS 8608 (S.D.N.Y. May 14, 2004).................................................18

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
    396 F.3d 96 (2d Cir. 2005) ............................................................................... 10, 11, 15

*Webster v. Smithfield Assocs. LLC d/b/a Pastis Restaurant, et al.,*
    08-CV-166 (LTS) (S.D.N.Y. Mar. 9, 2009) ............................................................... 17

*Wright v. Stern,*
    553 F. Supp. 2d 337 (S.D.N.Y. 2008) ................................................................. 11, 12

**STATUTES**

29 U.S.C. § 216 ................................................................................................. *passim*

Fed. R. Civ. P. 23 .............................................................................................. *passim*

N.Y. Lab. Law (Consol. 2009) .......................................................................... *passim*

**TREATISES**

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*
    (4th ed. 2002) .......................................................................... 8, 10, 11, 13

**ARTICLES**

Frank Bruni, *Recession Makes Restaurants Eager to Serve You,*
    N.Y. Times, Feb. 4, 2009, D1 ........................................................................... 16

Lisa Fickenscher, *Recession Makes a Meal of City's Top Restaurants,* available at
    crainsnewyork.com/article/20090426/SMALLBIZ/30469967,
    Apr. 26, 2009 ................................................................................................. 16

Louis Pechman (LP-6395)
Berke-Weiss & Pechman LLP
488 Madison Avenue, 11th Floor
New York, New York 10022
(212) 583-9500
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GERALD DUCHENE, et al.,                           :
                                                  :    06 Civ. 4576 (PAC) (GWG)
                              Plaintiffs,          :
                                                  :    **MEMORANDUM OF**
        -against-                                 :    **LAW IN SUPPORT OF**
                                                  :    **PLAINTIFFS' MOTION**
                                                  :    **FOR PRELIMINARY**
MICHAEL CETTA, INC. d/b/a SPARKS                  :    **APPROVAL OF**
STEAK HOUSE, and MICHAEL CETTA,                   :    **SETTLEMENT**
                                                  :
                              Defendants.          :    **ECF CASE**
------------------------------------------------------------X

      Pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and

Section 216(b) of the Fair Labor Standards Act ("FLSA"), plaintiffs apply to this Court

for preliminary approval of a proposed settlement (the "Settlement") in this class and

collective action (the "Lawsuit"). Counsel to defendants Michael Cetta, Inc. d/b/a

Sparks Steak House and Michael Cetta (collectively, "defendants" or "Sparks") have

agreed to the terms of the Settlement and agree to the relief requested herein.

## INTRODUCTION

      Plaintiffs submit this motion requesting preliminary approval of a proposed

settlement in this Lawsuit brought on behalf of certain employees of defendants. The

Settlement is set forth in a Joint Stipulation of Settlement and Release, executed April 6,

2009 (the "Settlement Agreement"), annexed to the Declaration of Louis Pechman (the

"Pechman Declaration") as Exhibit H.

Subject to Court approval, the parties have settled plaintiffs' and class members' claims for significant monetary relief of $3,150,000.  The Settlement Agreement resolves all of plaintiffs' and class members' claims before this Court.  It also satisfies all of the criteria for preliminary approval under federal law.  Accordingly, plaintiffs respectfully request that the Court:

(1) grant preliminary approval of the Settlement Agreement;

(2) approve the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing ("Proposed Notice"), attached as Exhibit C to the Settlement Agreement, and direct its distribution; and

(3) schedule a Fairness Hearing at the Court's convenience at which the Court will consider the parties' motion for (i) final approval of the Settlement, (ii) entry of their proposed final judgment, (iii) approval of Berke-Weiss & Pechman LLP's ("Class Counsel") application for approval of Service Payments to certain plaintiffs, and (iv) approval of Class Counsel's application for approval of an award of attorneys' fees.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Procedural History

Plaintiffs are individuals currently and formerly employed as waiters at Sparks Steak House, operated by defendants.

On June 14, 2006, plaintiff Gerald Duchene commenced the Lawsuit, which asserted class claims under the New York Labor Law ("NYLL") and collective claims under the FLSA, alleging that defendants failed to properly compensate plaintiffs at the federal and state minimum wage by improperly taking a "tip credit" while not permitting its waiters to retain the entirety of their tips.  In addition, the Lawsuit alleged that Sparks unlawfully deducted and distributed the tips of waiters to other non-tipped employees and non-waiters (*e.g.* the Banquet Manager, Kitchen Manager, Wine Steward, appetizer expediters or kitchen "waiters," the dessert "waiter," and bartenders).  The plaintiffs sought recovery of, *inter alia*, misappropriated tips, unpaid

wages, liquidated damages, pre-judgment interest, post-judgment interest, and attorneys' fees and costs, as well as injunctive and declaratory relief under the NYLL and FLSA.

Defendants have denied and continue to deny all of the allegations made by plaintiffs in the Lawsuit, and have denied and continue to deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Lawsuit.

On August 24, 2006 the Court, by Order of Judge Crotty, ordered the Lawsuit to proceed as a collective action, pursuant to Section 216(b) of the FLSA, on behalf of waiters who were employed by Sparks at any time between June 14, 2003 and the date of final judgment in this proceeding. (*See* Order dated August 24, 2006, Pechman Decl., Exhibit B.) Pursuant to that Order, notice was sent out to individuals identified by defendants as having worked as waiters at Sparks during that time period. The opt-in deadline for filing Consents to Sue with the Court was December 26, 2006. (*See* Notice of Lawsuit, Pechman Decl., Exhibit C.)

On June 18, 2007, the Court granted plaintiffs' motion under Rule 23 to certify a class "consisting of all persons who have worked as waiters at Sparks between June 14, 2000 and the date of final judgment in this proceeding" (the "Rule 23 Class"). (*See* Order dated June 18, 2007, Pechman Decl., Exhibit D.)

On August 6, 2007, in response to a request from plaintiffs to allow additional waiters to join the collective action, the Court declined to reopen the period in which waiters could choose to "opt-in" to the FLSA collective action. (*See* Memo Endorsed Letter, Pechman Decl., Exhibit E.)

On September 21, 2007, class action notices approved by the Court were sent out to all members of the Rule 23 Class. (*See* Notice of Class Action Lawsuit, Pechman Decl., Exhibit F.)

As of January 2009, Sparks modified its policies so that all waiters in the tip pool provide direct table service to Sparks customers and are thus entitled to share in the tips. Accordingly, tips are now distributed only to employees who are involved in direct table service with customers, thereby indisputably ending the accrual of potential liability under the FLSA and the NYLL as of December 31, 2008.

**B.     Discovery**

The parties engaged in extensive discovery, both informal and formal, before agreeing to resolve this case. Class Counsel interviewed over fifty waiters in the course of the litigation to determine relevant information necessary for the prosecution of this case.

Class Counsel has conducted extensive investigation and prosecution of this case, including, but not limited to, researching a panoply of legal issues under the FLSA and NYLL, interviewing dozens of class members and opt-in plaintiffs, reviewing thousands of documents, deposing corporate representatives and defending plaintiffs at their depositions, reviewing deposition transcripts, reviewing and analyzing payroll data, filing a motion for collective action certification, filing a motion for class certification and presenting oral argument on that motion, obtaining collective and class certification, sending out notices pursuant to those certifications, and preparing factual and legal arguments in anticipation of making a motion for summary judgment.

**C.     Settlement Negotiations**

During the course of the settlement discussions, Class Counsel met with defendants' counsel on several occasions. At these meetings, the parties debated their

4

respective positions on liability and damages.  The settlement meetings and discussions were highly beneficial to each party in assessing their own risks of proceeding with litigation, as the parties continued to learn new information about each other's respective positions.  Both parties made clear that they were determined to move the litigation forward if they could not reach a fair resolution, as their respective factual and legal positions differed significantly.

The parties jointly retained Norman Bromberg, former District Director of the U.S. Department of Labor's Wage and Hour Division, New York District Office, to provide an objective expert analysis of the claims.  (*See* Affidavit of Norman Bromberg, Pechman Decl., Exhibit G.)  Taking into account Mr. Bromberg's assessment as to the strengths and weaknesses of each of the claims in the Lawsuit, along with the discovery taken in earlier stages of this litigation, the parties decided on a framework for resolving the case.  After reaching a settlement in principle, the parties continued to discuss the details and various aspects of the Settlement.  The parties participated in a settlement conference in this matter under the supervision of Magistrate Judge Gabriel Gorenstein at which further details of the Settlement were agreed to.  Counsel continued negotiating the terms of the proposed settlement until the Settlement Agreement was reached.

After many hours of negotiation over a period of several months, the parties entered into the Settlement Agreement to resolve the Lawsuit.  The settlement amount is a compromise figure, which takes into account what the parties contended were risks regarding proof of the extent to which certain employees provided customer service and could thus properly participate in the tip pool, and other defenses asserted by defendants.

5

## SUMMARY OF THE SETTLEMENT TERMS

### A.      The Settlement Fund

The total payment under the Settlement Agreement, including all attorneys' fees, the Service Payments to certain Class Representatives, and any other payments provided by the Settlement Agreement, is three million one hundred and fifty thousand dollars and no cents ($3,150,000.00) (the "Settlement Fund").

### B.      Eligible Employees

There are two partially overlapping categories of workers entitled to receive payments from the Settlement Fund, the "FLSA Collective" and the "Rule 23 Class." The FLSA Collective consists of individuals who chose to affirmatively opt into the Collective to assert their claims under the FLSA by filing a Consent to Sue pursuant to the August 24, 2006 Order of the Court. The Rule 23 Class consists of all waiters who worked at Sparks between June 14, 2000 through December 31, 2008, with the exception of one eligible individual who chose to opt out of membership in the class.[1] Lists of the Rule 23 Class members and the FLSA Collective Members are attached to the Settlement Agreement as Exhibits A and B, respectively.

### C.      Allocation Formula

According to the Settlement Agreement, the FLSA Collective Members and the Rule 23 Class Members will be paid from the Settlement Fund, which shall be allocated between (1) damages under the NYLL for the Rule 23 Class consisting of disgorgement of money which plaintiffs contend was unlawfully diverted from the tip pool, and (2) damages under the FLSA for the FLSA opt-in plaintiffs, consisting of payment of the tip credit that was taken by Sparks, along with liquidated damages.  The Settlement Fund

---

[1] Two individuals, Sergio Carlet and Joanne Wejrowski, filed exclusion requests.  However, Sergio Carlet was a bartender and was thus ineligible to participate in the Class Action in any event.

will be allocated pursuant to a formula that takes into account the number of hours worked by each waiter during the FLSA and NYLL statute of limitations periods and the measures of damages available. (*See* Pechman Decl., Exhibit H.)

**D.     Attorneys' Fees and Litigation Costs**

Consistent with the Settlement Agreement, Class Counsel shall be paid, upon motion of Class Counsel and subject to Court approval, a sum of One Million Fifteen Thousand Dollars and no cents ($1,015,000.00), which amount consists of a contingent fee equal to one third of the Settlement Fund, less $35,000.00 in service payments to certain plaintiffs (the "Service Payments"). Class Counsel will not seek reimbursement for their actual out of pocket litigation costs and expenses. By totaling the attorneys' fees and Service Payments as one third of the recovery, the Settlement Agreement comports with the general understanding of all plaintiffs that a third of the recovery is set aside for fees. In this regard, the one-third portion is in accordance with Class Counsel's retainer agreements with the opt-in plaintiffs, and the understanding of all plaintiffs pursuant to the notices which were sent out to potential FLSA Collective and Rule 23 Class Members, which set forth Class Counsel's fee as one third of any settlement or award obtained.

Class Counsel has already expended approximately one thousand five hundred hours prosecuting and negotiating the settlement of this matter and will continue to spend considerable billable time on this matter through its final resolution. (Pechman Decl., ¶ 11).

The Court need not rule on fees at this time. Pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2), Class Counsel will file a Motion for Approval of Attorneys' Fees and Service Payments along with their Motion for Final Approval of the Settlement.

**E.    Service Payments**

Under the Settlement Agreement, in addition to their individualized awards

under the allocation formula, subject to Court approval, plaintiffs Gerald Duchene and

Ibrahim Wakim will each receive an additional payment of twenty-five thousand

dollars ($25,000) and ten thousand dollars ($10,000) respectively, in recognition of the

extraordinary services and their considerable efforts rendered on behalf of the Rule 23

Class. (Pechman Decl., ¶ 12.)  Plaintiffs will move for Court approval of these Service

Payments simultaneously with Plaintiffs' Motion for Final Approval of the Settlement.

**F.    Releases**

The Settlement Agreement provides that Rule 23 Class Members will release

their NYLL wage and hour claims.  In addition, all FLSA Collective Members will

release their claims under the FLSA.

**CLASS ACTION SETTLEMENT PROCEDURE**

Rule 23 sets forth a defined procedure and specific criteria for settlement

approval in class action settlements.  The Rule 23(e) settlement approval procedure

describes three distinct steps:

(1)    Preliminary approval of the proposed settlement after submission to the
       Court of a written motion for preliminary approval;

(2)    Dissemination of mailed and/or published notice of settlement to all
       affected class members; and

(3)    A final settlement approval hearing at which class members may be heard
       regarding the settlement, and at which argument concerning the fairness,
       adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class*

*Actions,* §§11.22, *et seq.* (4th ed. 2002) ("Newberg").  These procedures safeguard class

members' procedural due process rights and enable the Court to fulfill its role as the

guardian of class interests.

With this motion, plaintiffs request that the Court take the first step in the settlement approval process by granting preliminary approval of the Settlement Agreement, approving plaintiffs' proposed notice, and authorizing its distribution.

The parties respectfully submit for the Court's consideration and approval the following proposed schedule for final resolution of this matter:

(1)   The Notice of Class Action Settlement ("Notice") will be mailed to class members within ten (10) days after the Court grants Plaintiffs' Motion for Preliminary Approval of Settlement and approves the Notice.

(2)   Class members will have forty-five (45) days after the date the Notice is mailed to object to the Settlement ("Notice Period").

(3)   Plaintiffs will file a Motion for Final Approval of Settlement, Service Payments and Attorneys' Fees at least seven (7) days before the Fairness Hearing.

(4)   A Fairness Hearing will be held as soon as is convenient for the Court.

(5)   After the Fairness Hearing, if the Court grants Plaintiffs' Motion for Final Approval of the Settlement, the Court will issue a Final Order and Judgment.

(6)   The Effective Date of Settlement ("Effective Date") shall be fifteen (15) days after the Court enters its Final Order and Judgment if no objections are filed.  If objections are filed and overruled, and no appeal is taken of the final approval order, then the Effective Date of final approval shall be fifteen (15) days after the appeal is withdrawn or after an appellate decision affirming the final approval decision becomes final.

## ARGUMENT

## THIS COURT SHOULD PRELIMINARILY
## APPROVE THE SETTLEMENT

### A.    Role of the Court

Rule 23(e) requires judicial approval for any compromise of claims brought on a class basis. Approval of a proposed settlement is a matter within the broad discretion of the district court. *See, e.g., In re Michael Milken & Assoc. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1997) (the trial court has discretion to approve a class action settlement and should be concerned with "whether the settlement, taken as a whole, is adequate, fair and reasonable"); *In re Nasdaq Market-Makers Antitrust Litigation*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted.").

"If the court preliminarily approves the settlement, it must direct the preparation of notice of … the proposed settlement and the date of the final fairness hearing." *In re Initial Pub. Offering*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005). Class members may then present arguments and evidence for and against the terms of the Settlement before the Court decides whether the Settlement is fair, reasonable and adequate. *Id.*

In addition, under the FLSA, employees' claims for back wages may not be compromised absent either supervision by the Secretary of Labor or approval by the Court. *See* 29 U.S.C. § 216(c).

### B.    Preliminary Approval of the Settlement Is Appropriate

The law favors compromise and settlement of class action suits and grants courts broad discretion to approve settlements. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396

F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements,

particularly in the class action context") (quoting *In re PaineWebber Ltd. Pshps. Litig.*, 147

F.3d 132, 138 (2d Cir. N.Y. 1998)); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575

(S.D.N.Y. 2008) ("Settlement approval is within the Court's discretion, which should be

exercised in light of the general judicial policy favoring settlement.") (internal citations

omitted); *see also Newberg* § 11.41 ("The compromise of complex litigation is encouraged

by the courts and favored by public policy.") In exercising this discretion, courts should

give "proper deference to the private consensual decision of the parties." *Hanlon v.

Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988).

Preliminary approval, which plaintiffs seek here, requires only an "initial

evaluation" of the fairness of the proposed settlement on the basis of written

submissions and an informal presentation by the settling parties. *Newberg* § 11.25.  To

grant preliminary approval, the Court need only find that there is "'probable cause' to

submit the [Settlement] to class members and hold a full-scale hearing as to its fairness."

*In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); *Newberg* § 11.25 ("If the

preliminary evaluation of the proposed settlement does not disclose grounds to doubt

its fairness . . . and appears to fall within the range of possible approval," the court

should permit notice of the settlement to be sent to class members.)

"Fairness is determined upon review of both the terms of the settlement

agreement and the negotiating process that led to such agreement." *Frank v. Eastman

Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005).  "A presumption of fairness, adequacy,

and reasonableness may attach to a class settlement reached in arm's-length

negotiations between experienced, capable counsel after meaningful discovery." *Wal-

Mart Stores, Inc.*, 396 F.3d at 116 (internal quotations omitted).  *See also Wright v. Stern*,

553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008) (recognizing that courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness).

If the settlement was achieved through experienced counsels' arm's-length negotiations, "[a]bsent fraud or collusion," "[courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05-CV-10240 (CM), 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007); *see also In re Top Tankers, Inc. Sec. Litig.*, No. 06-CV-13761 (CM), 2008 U.S. Dist. LEXIS 58106, at *10-11 (S.D.N.Y. July 31, 2008) ("[A] strong initial presumption of fairness attaches to a proposed settlement if it was the product of arm's-length negotiations conducted by a capable counsel. . . .") (internal quotations omitted); *International Union of Elec., Elec., Salaried, Mach. & Furniture Workers v. Unisys Corp.*, 858 F. Supp. 1243, 1265 (E.D.N.Y. 1994) (where class counsel express their opinion that the proposed class settlement is fair, reasonable and adequate, the opinion of experienced and competent counsel is accorded great weight, and courts consistently refuse to substitute their business judgment for that of counsel, absent evidence of fraud or overreaching).

Preliminary approval is the first step in the settlement process. It simply allows notice to issue to the Rule 23 Class and for Class Members to object to the Settlement. After the notice period, the Court will be able to evaluate the Settlement with the benefit of the Rule 23 Class Members' input.

### a.    The Settlement is Fair, Reasonable, and Adequate

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). Although the Court's task on a motion for preliminary approval is merely to perform an "initial evaluation" to determine whether the settlement falls within the

range of possible final approval, or "the range of reasonableness," it is useful for the Court to consider the criteria on which it will ultimately judge the Settlement. *Newberg* §§ 11.25-11.26.

The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell,* 495 F.2d at 463.  Here, all of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement.

### i.   Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1)

By reaching a favorable settlement prior to dispositive motions or trial, plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the Rule 23 Class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000).   This case is no exception, as there are 201 Rule 23 Class Members and claims have been brought under both federal and state statutes.

Although the parties have already undertaken considerable expense in litigating this matter, further litigation without settlement would necessarily result in additional expense and delay.  Additional discovery would be required to establish liability and damages.  A complicated trial would be necessary, requiring extensive testimony by

defendants, plaintiffs, and numerous class members, in addition to extensive expert testimony. Preparing and putting on evidence on the complex factual and legal issues at such a trial would consume tremendous amounts of time and resources for both sides, as well as requiring substantial judicial resources to adjudicate the parties' disputes. A trial of the damages issues, even on a representative basis, would be costly and would further defer closure. Any judgment would likely be appealed, thereby extending the duration of the litigation. This Settlement, on the other hand, makes monetary relief available to Rule 23 Class Members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of preliminary approval.

### ii.     The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)

Although notice of the Settlement has not yet been issued to the class, Class Counsel has had conversations with some of the Rule 23 Class Members, who have all reacted positively to the Settlement. (*See* Pechman Decl., ¶ 21.) Although the Court should analyze this factor after Notice is issued and Rule 23 Class Members are given a formal opportunity to object, it weighs in favor of preliminary approval.

### iii.    Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)

Although preparing this case through trial would require significant additional discovery for both sides, the parties have completed enough discovery, including the depositions of key witnesses, to recommend settlement. *See In re Austrian*, 80, F. Supp. 2d at 176 ("The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement ... [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit.") (internal quotations omitted). The parties' discovery meets this standard, as the discovery here was an "aggressive effort" to

litigate the case, including the taking of multiple plaintiff and defendant depositions and review of thousands of documents.

### iv.    Plaintiffs Would Face Real Risks if the Case Proceeded to Trial (*Grinnell* Factors 4 and 5)

While plaintiffs' case is strong, it is subject to considerable risk as to liability and damages.  In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian*, 80 F. Supp. 2d at 177 (internal quotations omitted).  In light of the defenses available to defendants and the fact-intensive nature of proving liability under the FLSA and NYLL, a jury trial on the merits could pose substantial risk to plaintiffs as to both liability and damages.

Proving that defendants improperly took a tip credit by failing to pay plaintiffs at the proper minimum wage rate could be challenging for plaintiffs.  This is because plaintiffs may have particular difficulty showing that certain employees with whom defendants required plaintiffs to share a portion of their tips were ineligible to participate in the tip pool.  In particular, the participation of the floating kitchen waiters, the Wine Steward, and the Banquet Manager might pose difficult factual questions.  Alternatively, a jury might believe that Sparks had a legitimate business justification in permitting the sharing of tips between individuals whom they considered fungible waiters.  Courts note that, regardless of the perceived strength of plaintiffs' case, liability is "no sure thing." *Wal-Mart*, 296 F.3d at 118.

While plaintiffs believe that they could ultimately establish defendants' liability on their claims, this would require significant factual development.  While plaintiffs believe that their claims are meritorious, Class Counsel is experienced and realistic, and understands that the resolution of liability issues, the outcome of the trial, and the

15

inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed Settlement alleviates this uncertainty. This factor weighs heavily in favor of preliminary approval.

> **v.    Establishing a Class And Maintaining It Through Trial (*Grinnell* Factor 6)**

This factor is not an issue as on June 18, 2007, the Court certified the Rule 23 Class.

> **vi.    Defendants' Ability to Withstand a Greater Judgment is Not Clear (*Grinnell* Factor 7)**

Defendants' ability to withstand a greater judgment is in doubt. Defendants have claimed that they are facing financial stress, similar to other high-end restaurants, in the wake of the current financial crisis. (Pechman Decl., ¶ 22.) *See also* Lisa Fickenscher, *Recession Makes a Meal of City's Top Restaurants*, available at crainsnewyork.com/article/20090426/SMALLBIZ/30469967, Apr. 26, 2009 ("Now some of the city's biggest and best-known restaurant operators are running out of tricks—and money."); Frank Bruni, *Recession Makes Restaurants Eager to Serve You*, N.Y. Times, Feb. 4, 2009 at D1 ("Fewer restaurants are filling up every night and more tables are going empty. According to Technomic, a Chicago-based research and consulting firm, fine-dining revenues could fall by 12 to 15 percent in 2009.")

Rule 23 Class Members still employed by Sparks are concerned about the effect of the current economic downturn. (Pechman Decl., ¶ 22.) Even if defendants could withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9). This factor also favors preliminary approval.

**vii.   The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)**

Defendants have agreed to settle this case for a substantial amount, $3.15 million. There are 201 members of the Rule 23 Class, and the resulting average per-class member settlement amount is $15,291.26 (inclusive of attorneys' fees). Notably, the range of settlement in this case compares favorably to similar tip-share cases against other high end New York City restaurants. *See, e.g., Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06-CV-4270 (PAC), 2009 U.S. Dist. LEXIS 27899 (S.D.N.Y. Mar. 31, 2009) (average per-class member settlement of $6,478 plus interest before attorneys' fees and costs are deducted); *Webster v. Smithfield Assocs. LLC d/b/a Pastis Restaurant, et al. (Balthazar)*, 08-CV-166 (LTS) (S.D.N.Y. Mar. 9, 2009) (average per-class member settlement of $1,258, inclusive of attorneys' fees).

The $3.15 million settlement amount represents a very good settlement for plaintiffs given the attendant risks of litigation, even though recovery could potentially be greater if plaintiffs succeeded on all claims at trial and survived an appeal.  Plaintiffs and the Rule 23 Class are getting full value for most of their claims and partial value for the claims which have been determined to be weaker and have a lower possibility of success.  Therefore, the Court should preliminarily approve the Settlement.  "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2.  "The fact that the settlement amount may equal but a fraction of potential recovery does not render the settlement inadequate." *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litigation)*, 607 F. Supp. 1312, 1330 (S.D.N.Y. 1985) (internal citations omitted).  *See also Cagan v. Anchor Sav. Bank FSB*, No. CV-88-3024 (CPS), 1990 U.S. Dist. LEXIS 11450, at *34-35 (E.D.N.Y. May 17, 1990)

(approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million"); *Brooks v. Am. Export Indus., Inc.,* No. 71-CV-5128 (LWP), 1977 U.S. Dist. LEXIS 17313, at *16-18 (S.D.N.Y. Feb. 17, 1977) (approving settlement of less than 1% of the best possible recovery).

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank,* 228 F.R.D. at 186 (quoting *In re Austrian,* 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein,* 464 F. 2d 689, 693 (2d Cir. 1972)). Moreover, the Settlement here provides a significant benefit of an immediate substantial payment to Class Members, rather than some "speculative payment of a hypothetically larger amount years down the road." *Teachers' Ret. Sys. V.A.C.L.N., Ltd.,* No. 01-CV-11814 (MP), 2004 U.S. Dist LEXIS 8608, at *16 (S.D.N.Y. May 14, 2004).

In sum, the *Grinnell* factors all weigh in favor of issuing preliminary approval of the Settlement Agreement. In the event that a substantial number of objectors come forward with meritorious objections, then the Court may reevaluate its determination. Because the Settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Joel A. v. Giuliani,* 218 F.3d 132, 138-39 (2d Cir. 2000), the Court should grant its preliminary approval.

### b.    The Settlement Contains No Obvious Deficiencies

The proposed settlement has no obvious deficiencies. The Settlement does not mandate excessive compensation for Class Counsel. Class Counsel will apply for an award of attorneys' fees and reimbursement of expenses, equal to one third of the

Settlement Fund (less Service Payments). This is the percentage agreed to in the retainer agreements with the named plaintiffs and the percentage that was disclosed in the court-authorized Notice to all FLSA Collective and Rule 23 Class Members.

This Court recently held that "the amount of fees requested [33% of the $3,265,000 settlement fund] is fair and reasonable using the 'percentage-of-recovery' method, which is consistent with the 'trend in the Second Circuit.'" *Mohney*, 2009 U.S. Dist. LEXIS 27899 at *16 (citations omitted). *See also Stefaniak v. HSBC Bank USA, N.A.*, No. 05-CV-720 (WMS), 2008 U.S. Dist. LEXIS 53871, at *9 (W.D.N.Y. June 28, 2008) (attorney's fees of 33% of $2,900,000 settlement amount approved); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (33 1/3% of settlement fund approved for attorneys' fees); *In re Blech Sec. Litig.*, No. 94-CV-7696 (RWS) , 2002 U.S. Dist. LEXIS 23170, at *6 (S.D.N.Y. Dec. 4, 2002) (33 1/3% of settlement fund approved for attorneys' fees, plus costs); *Adair v. Bristol Technology Sys.*, No. 97-CV-5874 (RWS), 1999 U.S. Dist. LEXIS 17627, at *9 (S.D.N.Y. Nov. 12, 1999) (33% of settlement fund approved for attorneys' fees, plus costs); *Klein ex rel. Ira v. PDG Remediation, Inc.*, No. 95-CV-4954 (DAB), 1999 U.S. Dist. LEXIS 650, at *11 (S.D.N.Y. Jan. 26, 1999) (33% is "within the range of reasonable attorney fees awarded in the Second Circuit"); *In re Crazy Eddie*, 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (33.8% of settlement fund approved for attorneys' fees, plus costs).

In addition, the Settlement provides Service Payments for two plaintiffs in this lawsuit who were instrumental in facilitating a resolution of this matter, in a total amount not to exceed $35,000, which is reasonable in light of the overall benefit conferred on the Settlement Class. In fact, this Court recently ovserved that "[s]uch service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation,

19

the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff." *Mohney*, 2009 U.S. Dist. LEXIS 27899 at *18 (approving aggregate incentive payment of $84,000 for fourteen plaintiffs in a wage and hour case under the FLSA); *see, e.g.*, *Sheppard v. Consolidated Edison Co. of New York, Inc.*, No. 94-CV-0403 (JG), 2002 U.S. Dist. LEXIS 16314, at *25-26 (E.D.N.Y. Aug. 1, 2002) (approving aggregate incentive payment of $119,167 for six named plaintiffs in a race discrimination class action).

### C.   The Proposed Class Notice is Appropriate

#### a.   The Proposed Class Notice Satisfies Due Process

The content of the Proposed Notice, which is attached to the Settlement Agreement as Exhibit C, fully complies with due process and Rule 23.

The Proposed Notice describes the terms of the Settlement, informs the Rule 23 Class about the allocation of settlement payments, attorneys' fees and service payments, provides a procedure regarding filing objections to the Settlement terms, and provides specific information regarding the date, time, and place of the final approval hearing. Accordingly, the detailed information in the Proposed Notice is more than adequate to put Rule 23 Class Members on notice of the proposed Settlement and is well within the requirements of Rule 23(e)(1). With respect to the requirements of Rule 23(e)(1), courts have approved class notices even when they provided only general information about a settlement. *See, e.g.*, *In re Michael Milken*, 150 F.R.D. at 60 (class notice "need only describe the terms of the settlement generally").

#### b.   The Notice and the Award Distribution Process Are Appropriate

The Settlement Agreement provides that notices will be mailed individually by Class Counsel to the last known address of each Rule 23 Class Member within 10 days of the Court's preliminary approval of the Proposed Notice. (Pechman Decl., Exhibit

H.) Plaintiffs' counsel will trace all returned undeliverable notices and re-send to the most recent addresses available.

The Proposed Notice will contain information about how to object to the Settlement. Rule 23 Class Members will have forty-five days from the date of mailing to comment on or object to the Settlement. Within fifteen days of final approval of the Settlement or, if there is an appeal of the grant of final approval, within fifteen days after all appeals are resolved in favor of final approval, the defendants' counsel will provide Class Counsel with the Rule 23 Class Members' payments. Class Counsel will then mail the payments to the Class Members within ten days.

### D.    The FLSA Settlement Should Be Approved

Because plaintiffs' FLSA claims are distinct from the NYLL wage and hour law claims they bring under Rule 23, plaintiffs seek approval of the settlement of the FLSA claims separately. The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement. *See Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 263 (S.D.N.Y. 1997) (FLSA collective actions differ from Rule 23 class actions in that FLSA "opt in" proceedings need not strictly observe due process rights necessary to protect absent class members); *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984) (FLSA collective actions do not implicate the same due process concerns as Rule 23 actions because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date").

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Id.* at

21

1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the Court should approve the settlement. *Id.* at 1354.

In this case, the Settlement was the result of vigorously contested litigation. Recognizing the uncertain legal and factual issues involved, the parties engaged in mediation with a wage and hour expert and, after several rounds of negotiation, ultimately reached the Settlement pending before the Court. During the litigation, plaintiffs and defendants were both represented by counsel. The Settlement was the result of arm's-length negotiations. Moreover, the FLSA Collective plaintiffs will be receiving the full value of the tip credit which was taken for the statutory period, plus liquidated damages (less attorneys' fees). Therefore, because the Settlement provides full relief and was reached based on reasonable compromise in a contested litigation, the Court should approve the FLSA settlement.

## CONCLUSION

For the reasons set forth above, plaintiffs respectfully request that the Court grant their Motion for Preliminary Approval of Settlement, and enter the Proposed Order. (Pechman Decl., Exhibit I.)

Dated: New York, New York
    May 21, 2009

BERKE-WEISS & PECHMAN LLP

By: _____
    Louis Pechman (LP-6395)
    488 Madison Avenue, 11th Floor
    New York, NY  10022
    (212) 583-9500
    *Attorneys for Plaintiffs*

22