Louis Pechman (LP-6395)
Jessica Tischler (JT-1582)
Berke-Weiss & Pechman LLP
488 Madison Avenue
New York, New York 10022
(212) 583-9500
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

GERALD DUCHENE, et al.,                    :
                                           :      06 Civ. 4576 (PAC) (GWG)
                        Plaintiffs,        :
                                           :
        -against-                          :
                                           :
                                           :
MICHAEL CETTA, INC. d/b/a SPARKS           :
STEAK HOUSE, and MICHAEL CETTA,            :      **ECF CASE**
                                           :
                        Defendants.        :

------------------------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT, ATTORNEYS' FEES, AND SERVICE PAYMENTS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... iv

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ........................................................ 2

    A. Procedural History ................................................................................................ 2

    B. Discovery ............................................................................................................... 4

    C. Settlement Negotiations ........................................................................................ 4

SUMMARY OF THE SETTLEMENT TERMS ................................................................. 6

    A. The Settlement Fund .............................................................................................. 6

    B. Eligible Employees ................................................................................................ 6

    C. Allocation Formula ................................................................................................ 7

    D. Attorneys' Fees and Litigation Costs .................................................................... 8

    E. Service Payments ................................................................................................... 8

    F. Releases .................................................................................................................. 9

    G. Settlement Administration ..................................................................................... 9

        a. Mailing .......................................................................................................... 9

        b. Results of the Mailing ................................................................................... 9

ARGUMENT ...................................................................................................................... 10

THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT ............. 10

    A. The Settlement Should be Approved in All Respects ........................................... 10

    B. Procedural Fairness Considerations Support Approving This
       Settlement ............................................................................................................. 11

        a. The Settlement is Fair, Reasonable, and Adequate ..................................... 12

            i. Litigation Through Trial Would Be Complex, Costly and
             Long (*Grinnell* Factor 1) ..................................................................... 13

ii.  The Reaction of the Class Has Been Positive (*Grinnell* Factor 2) ........................................................................... 14

iii. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3) ........................................................................... 15

iv.  Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5) ..................................... 15

v.   Establishing a Class and Maintaining It Through Trial (*Grinnell* Factor 6) ............................................... 16

vi.  Defendants' Ability to Withstand a Greater Judgment is Not Clear (*Grinnell* Factor 7) ................................. 16

vii. The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ...................... 17

b.  The Filed Objections Should Have No Effect on the Court's Grant of Final Approval ............................................ 19

i.   The Objectors Already Received the Tips Which Form the Basis of the Disgorgement Pool ............................. 21

ii.  Elbeyali and Karahoda Have No Standing to Object to the Settlement and Do Not Release Their Claims ............. 23

iii. The Objectors' Claims Are Not Typical of Other Members of the Rule 23 Class .......................................... 24

c.  The Settlement Contains No Obvious Deficiencies .............. 24

THE COURT SHOULD APPROVE THE FLSA SETTLEMENT ........................ 25

CLASS COUNSEL'S ATTORNEYS' FEES SHOULD BE APPROVED ............... 26

a.  Class Counsel's Requested Percentage As a Fee Award Is Reasonable When Compared to the Lodestar ........................ 28

b.  The *Goldberger* Factors ................................................ 29

i.   Counsel's Time and Labor ................................................ 29

ii.  The Litigation's Magnitude and Complexity .................... 30

iii. The Risks of Litigation .................................................... 31

iv.   Quality of the Representation .................................................................. 32

v.   The Fee Is Reasonable In Relation to the Settlement ........................ 33

vi.   Public Policy Considerations ................................................................ 33

THE SERVICE PAYMENTS SHOULD BE APPROVED ..................................................... 34

CONCLUSION .......................................................................................................................... 35

# TABLE OF AUTHORITIES

## CASES

*Agofonova v. Nobu Corp.*, 07 Civ. 6926 (DAB)
(S.D.N.Y. Feb. 6, 2009) .............................................................. 18, 28

*Banyai v. Mazur*, 2007 U.S. Dist. LEXIS 25272
(S.D.N.Y. Mar. 30, 2007) ................................................................. 30

*Central States Southeast & Southwest Areas Health & Welfare Fund*,
504 F.3d 229 (2d Cir. 2007) ......................................................... 23, 24

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448
(2d Cir. 1974) ........................................................................ *passim*

*Farinella v. Paypal, Inc.*, 611 F. Supp. 2d 250 (E.D.N.Y. 2009) ............................ 26

*Fears v. Wilhelmina Model Agency, Inc.*, No. 02-Civ.4911,
2005 U.S. Dist. LEXIS 7961 (S.D.N.Y. May 5, 2005) ...................................... 35

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ................................ 15, 17, 18

*Gilliam v. Addicts Rehab. Ctr. Fund.*, No. 05-CV-3452,
2008 U.S. Dist. LEXIS 23016 (S.D.N.Y. Mar. 24, 2008) ................................. 11, 12, 33

*Glass v. UBS Financial Servs., Inc.*, No. C-06-4068MMC,
2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007) .................................... 35

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ........................ 27, 29

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1988) ................................... 11

*Hicks v. Morgan Stanley & Co.*, 2005 U.S. Dist. LEXIS 24890
(S.D.N.Y. Oct. 24, 2005) ................................................................ 27

*Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249
(S.D.N.Y. 1997) ........................................................................ 25

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................................................ *passim*

*In re Drexel Burnham Lambert Group, Inc.*,
130 B.R. 910 (S.D.N.Y. 1991) ........................................................... 23

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240,
2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) ................................ 11, 21, 27, 28

*In re Holocaust Victim Assets Litig.*,
424 F.3d 150 (2d Cir. 2005) ................................................................26

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ..........................................................30

*In re KeySpan Corp. Sec. Litig.*, No. 01CV5852(ARR),
2005 WL 3093399 (E.D.N.Y. Sept. 30, 2005) ....................................32

*In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129 (2d Cir. 2008) ......28

*In re Painewebber Ltd. Pshps. Litig.*, 171 F.R.D. 104
(S.D.N.Y. 1997) ....................................................................................21

*In re Priceline.com, Inc. Secs. Litig.*, No. 3:00-CV-1884 (AVC),
2007 U.S. Dist. LEXIS 52538, (D. Conn. July 20, 2007) ..................32

*In re Renaissancere Holdings Secs. Litig.*, 2008 U.S. Dist. LEXIS 3652
(S.D.N.Y. Jan. 18, 2008) ......................................................................20

*In re Sony SXRD Rear Projection Television Class Action Litigation*,
No. 06 Civ. 5173, 2008 U.S. Dist. LEXIS 36093 (S.D.N.Y. May 1, 2008). ......................23

*In re Tandoor Rest.*, No. PR-82-85,
(N.Y. Dep't of Labor, I.B.A. Dec. 23, 1987) ......................................7

*In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570
(S.D.N.Y. 2008) ........................................................................26, 31, 32

*In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761,
2008 U.S. Dist. LEXIS 58106 (S.D.N.Y. July 31, 2008) ....................11

*In re Vecco Instruments Secs. Litig.*, 05 MDL 01695,
2007 U.S. Dist. LEXIS 85629, (S.D.N.Y. Nov. 7, 2007) ................21, 32

*Joel A. v. Giuliani*, 218 F.3d 132 (2d Cir. 2000) ....................................19

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350
(11th Cir. 1982) ....................................................................................25

*Maley v. Dale Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ..........................................14, 29, 32, 33

*Mayfield v. Barr*, 985 F.2d 1090 (D.C. Cir. 1993) ..................................23

*Maywalt v. Parker & Parsley Petroleum Co.*,
67 F.3d 1072 (2d Cir. 1998) ................................................................11

*McClendon v. Continental Grp. Inc.*,
    802 F. Supp. 1216 (D.N.M. 1992) ................................................................21

*McKenna v. Champion Int'l Corp.*,
    747 F.2d 1211 (8th Cir. 1984) .................................................................25

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06-CV-4270 (PAC),
    2009 U.S. Dist. LEXIS 27899 (S.D.N.Y. Mar. 31, 2009) ................................17, 27, 33, 34

*Myers v. Copper Cellar Corp.*, 192 F.3d 546 (6th Cir. 1999) ....................................................7

*NASDAQ Market-Makers*, 187 F.R.D. 465 (S.D.N.Y. 1998) .................................................28

*RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94 Civ. 5587,
    2003 U.S. Dist. LEXIS 8239 (S.D.N.Y. May 15, 2003) ....................................................14

*Reyes v. Buddha-Bar NYC*, No. 08-CV-2494(DF),
    2009 U.S. Dist. LEXIS 45277 (S.D.N.Y. May 28, 2009) .................................................17

*Ross v. A.H. Robbins, Inc.*, 700 F. Supp. 682 (S.D.N.Y. 1988) ...............................................14

*Rozell v. Courtney Ross-Holst*, 576 F. Supp. 2d 527 (S.D.N.Y. 2008) ....................................28

*Sheppard v. Consolidated Edison Co. of New York, Inc.*, No. 94-CV-0403,
    2002 U.S. Dist. LEXIS 16314 (E.D.N.Y. Aug. 1, 2002) ..................................................35

*Stefaniak v. HSBC Bank USA, N.A.*, No. 05-CV-720,
    2008 U.S. Dist. LEXIS 53872 (W.D.N.Y. June 28, 2008) ...............................................33

*Strougo v. Bassini*, 258 F. Supp. 2d 254 (S.D.N.Y. 2003) .........................................27, 28, 34

*Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 U.S. Dist. LEXIS 9144
    (S.D.N.Y. Jan. 31, 2007) ....................................................................................31

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, No. 01-CV-11814 (MP),
    2004 U.S. Dist LEXIS 8608 (S.D.N.Y. May 14, 2004) ....................................................18

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) .................11, 16, 27, 28

*Webster v. Smithfield Assocs., LLC d/b/a Pastis Restaurant, et al.*,
    08 Civ. 166 (LTS) (S.D.N.Y. Mar. 9, 2009) ...........................................................18, 29

*Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) ...........................................14, 34

## STATUTES

29 U.S.C. § 201 *et seq.*.................................................................................. *passim*

Fed. R. Civ. P. 23.......................................................................................... *passim*

N.Y. Lab. Law (Consol. 2009)..................................................................... *passim*

N.Y. Lab. Law § 650 ............................................................................................33

## TREATISES

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*
(4th ed. 2002)....................................................................................................23

*Manual for Complex Litigation, Third* (1995).........................................................11

## ARTICLES

Frank Bruni, *Recession Makes Restaurants Eager to Serve You*,
N.Y. Times, Feb. 4, 2009, D1 .............................................................................17

Lisa Fickenscher, *Recession Makes a Meal of City's Top Restaurants*, available at
crainsnewyork.com/article/20090426/SMALLBIZ/30469967,
Apr. 26, 2009 ....................................................................................................17

Katy McLaughlin, *Prime Time for Steak Lovers*, The Wall Street Journal,
July 15, 2009, D1 .............................................................................................16

Louis Pechman (LP-6395)
Jessica Tischler (JT-1582)
Berke-Weiss & Pechman LLP
488 Madison Avenue
New York, New York 10022
(212) 583-9500
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
GERALD DUCHENE, et al.,                    :    06 Civ. 4576 (PAC) (GWG)
                                           :
                      Plaintiffs,          :    **MEMORANDUM OF LAW**
                                           :    **IN SUPPORT OF**
        -against-                          :    **PLAINTIFFS' MOTION**
                                           :    **FOR FINAL APPROVAL**
                                           :    **OF SETTLEMENT,**
MICHAEL CETTA, INC. d/b/a SPARKS           :    **ATTORNEYS' FEES, AND**
STEAK HOUSE, and MICHAEL CETTA,            :    **SERVICE PAYMENTS**
                                           :
                      Defendants.          :    **ECF CASE**
-----------------------------------------------------------------------X

Pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and

Section 216(b) of the Fair Labor Standards Act ("FLSA"), plaintiffs apply to this Court

for final approval of a proposed settlement (the "Settlement") in this class and collective

action (the "Lawsuit"). Counsel to defendants Michael Cetta Inc. d/b/a Sparks Steak

House and Michael Cetta (collectively, "defendants" or "Sparks") have agreed to the

terms of the Settlement and agree to the relief requested herein.

## PRELIMINARY STATEMENT

The Settlement, which provides for monetary relief of $3,150,000, resolves all of

plaintiffs' and Rule 23 Class Members' claims and satisfies all of the criteria for final

approval under federal law. The Settlement was reached after more than three years of

active litigation, substantial discovery and motion practice, negotiations, mediation

sessions with an experienced mediator, and guidance of an expert in the field of wage

and hour law. The members of the Rule 23 Class have been notified of the terms of the

Settlement, the monetary relief, the allocation formula, and their right to object to the Settlement. For the reasons stated below, the Settlement should be granted final approval.

Plaintiffs submit this Memorandum of Law in support of their Motion for Final Approval of the Settlement ("Plaintiffs' Motion for Final Approval"), pursuant to Federal Rule of Civil Procedure 23(e), for an order approving as fair and adequate the class-wide settlement of this action, as set forth in the Joint Stipulation of Settlement and Release (the "Settlement Agreement"), attached as Exhibit H to the Declaration of Louis Pechman in Support of Plaintiffs' Motion for Final Approval of Settlement ("Pechman Decl.").

## FACTUAL AND PROCEDURAL BACKGROUND

**A.  Procedural History**

Plaintiffs are individuals currently and formerly employed as waiters at Sparks Steak House, owned and operated by defendants.

On June 14, 2006, plaintiff Gerald Duchene commenced the Lawsuit, which asserted class claims under the New York Labor Law ("NYLL") and collective claims under the FLSA. (*See* Complaint, Pechman Decl. Exhibit A.)  The Lawsuit alleged that Sparks unlawfully deducted and distributed the tips of waiters to individuals at Sparks who were not "tipped employees" (*e.g.* the Banquet Manager, Kitchen Manager, Wine Steward, appetizer expediters or kitchen "waiters," the dessert "waiter," and bartenders).  The plaintiffs sought recovery of, *inter alia*, misappropriated tips, unpaid wages, the value of the "tip credit" improperly taken by Sparks, liquidated damages, pre-judgment interest, post-judgment interest, and attorneys' fees and costs, as well as injunctive and declaratory relief under the NYLL and FLSA.

Defendants denied and continue to deny all of the allegations made by plaintiffs in the Lawsuit, and have denied and continue to deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Lawsuit.

On August 24, 2006 the Court, by Order of Judge Crotty, ordered the Lawsuit to proceed as a collective action, pursuant to Section 216(b) of the FLSA, on behalf of waiters who were employed by Sparks at any time between June 14, 2003 and the date of final judgment in this proceeding. (*See* August 24, 2006 Order, Pechman Decl. Exhibit B.) Pursuant to that Order, notice was sent out to individuals identified by defendants as having worked as waiters at Sparks during that time period. (*See* Notice of Lawsuit, Pechman Decl. Exhibit C.) The opt-in deadline for filing Consents to Sue with the Court was December 26, 2006.

On June 18, 2007, the Court granted plaintiffs' motion under Rule 23 to certify a class "consisting of all persons who have worked as waiters at Sparks between June 14, 2000 and the date of final judgment in this proceeding" (the "Rule 23 Class"). (*See* June 18, 2007 Order, Pechman Decl. Exhibit D.)

On August 6, 2007, in response to a request from plaintiffs to allow additional waiters to join the collective action, the Court declined to reopen the period in which waiters could choose to "opt-in" to the FLSA collective action. (*See* July 30, 2007 letter endorsed by Judge Crotty on August 6, 2007, Pechman Decl. Exhibit E.)

On September 21, 2007, class action notices approved by the Court were sent out to all members of the Rule 23 Class. (*See* Notice of Class Action Lawsuit, Pechman Decl. Exhibit F.)

As of January 2009, Sparks modified its policies so that all waiters in the tip pool provide direct table service to Sparks customers and are thus entitled to share in the

tips. Accordingly, tips are now distributed only to employees who are involved in direct table service with clients, thereby effectively ending the accrual of potential liability under the FLSA and the NYLL as of December 2008. (Pechman Decl. ¶ 11.)

On July 8, 2009, the Court granted preliminary approval of the Settlement Agreement and authorized mailing of the Notice of Settlement to the Rule 23 Class, which was mailed to the Rule 23 Class on July 9, 2009. (*See* Preliminary Approval Order, Pechman Decl. Exhibit I; Notice of Class Action Settlement, Pechman Decl. Exhibit J.)

**B.     Discovery**

The parties engaged in extensive discovery, both informal and formal, before agreeing to resolve this case. Class Counsel interviewed over fifty waiters in the course of the litigation to determine relevant information necessary for the prosecution of this case. (Pechman Decl. ¶ 9.)

Class Counsel has conducted extensive investigation and prosecution of this case, including, but not limited to, researching a panoply of legal issues under the FLSA and NYLL, interviewing dozens of class members and opt-in plaintiffs, reviewing documents, deposing corporate representatives and defending plaintiffs at their depositions, reviewing deposition transcripts, reviewing and analyzing payroll data, filing a motion for collective action certification, filing a motion for class certification, obtaining collective and class certification, sending out notices pursuant to those certifications, and preparing factual and legal arguments in anticipation of making a motion for summary judgment. (Pechman Decl. ¶ 10.)

**C.     Settlement Negotiations**

During the course of the settlement discussions, Class Counsel met with defendants' counsel on several occasions. At these meetings, the parties debated their

respective positions on liability and damages.  The settlement meetings and discussions were highly beneficial to each party in assessing their own risks of proceeding with litigation, as the parties continued to learn new information about each other's respective positions.  Both parties made clear that they were determined to move the litigation forward if they could not reach a fair resolution, as their respective factual and legal positions differed strongly.

The parties jointly retained Norman Bromberg, former District Director of the U.S. Department of Labor's Wage and Hour Division, New York District Office, to provide an objective expert analysis of the claims.  (*See* Affidavit of Norman Bromberg, Pechman Decl. Exhibit G.)  Taking into account Mr. Bromberg's opinion as to the strengths and weaknesses of each of the claims in the Lawsuit, along with the discovery taken in earlier stages of this litigation, the parties decided on a framework for resolving the case.  (Pechman Decl. ¶ 12.)  After reaching a settlement in principle, the parties continued to discuss the details and various aspects of the settlement.  The parties participated in a settlement conference in this matter under the supervision of Magistrate Judge Gabriel Gorenstein at which further details of the settlement were agreed to.  (Pechman Decl. ¶ 13.)  Counsel continued negotiating the terms of the proposed settlement until the Settlement Agreement was reached.

After many hours of negotiation over a period of several months, the parties entered into the Settlement Agreement to resolve the Lawsuit.  The settlement amount is a compromise figure, which takes into account what the parties contended were risks regarding proof of the extent to which certain employees had direct customer interaction and could thus properly participate in the tip pool, and other defenses asserted by defendants.

# SUMMARY OF THE SETTLEMENT TERMS

**A.     The Settlement Fund**

The total payment under the Settlement Agreement, including all attorneys' fees, the Service Payments to certain Class Representatives, and any other payments provided by the Settlement Agreement, is three million one hundred and fifty thousand dollars and no cents ($3,150,000.00) (the "Settlement Fund"). Defendants shall also pay the employer portion of government-mandated withholdings, which amount shall not be included in, but will be in addition to, the maximum total payout.

**B.     Eligible Employees**

There are two partially overlapping categories of workers entitled to receive payments from the Settlement Fund, the "FLSA Collective" and the "Rule 23 Class." The FLSA Collective consists of individuals who chose to affirmatively opt into the Collective to assert their claims under the FLSA by filing a Consent to Sue pursuant to the August 24, 2006 Order of the Court. The Rule 23 Class consists of all waiters who worked at Sparks between June 14, 2000 through December 31, 2008, with the exception of one eligible individual, Joanne Wejrowski, who chose to opt out of membership in the class.

Also excluded from the Rule 23 Class are Jeton Karahoda and Mohamed Elbeyali, individuals whose participation in the tip pool formed the basis for the Lawsuit against Sparks. The Settlement Agreement specifically provided that:

> [E]xcluded from the Rule 23 Class are Mohamed Elbeyali and Jeton Karahoda, whose positions in the kitchen were alleged to be ineligible for participation in the tip pool and are not receiving any money from the NYLL Settlement Funds.

Settlement Agreement at 3, Pechman Decl. Exhibit H.

Karahoda and Elbeyali were excluded from the Class from June 14, 2000 until December 31, 2008 as their duties consisted primarily of food preparation in the kitchens. As described by Sparks' former General Manager Rami Maher, "the kitchen waiters were not responsible for either taking orders from customers (a 'front waiter' position) or taking food from the kitchen to the table (a 'runner position'). Rather, they worked at either the salad station or hot appetizer station, which were approximately 50-60 feet from the door leading from the kitchen to the dining room." Affidavit of Rami Maher ¶ 3, Pechman Decl. Exhibit K.

Exclusion of these individuals from the Class (as well as other individuals for the period they did not perform the function of a "tipped employee")[1] dovetails with the claims in the Lawsuit and prevailing law. *See, e.g., Myers v. Copper Cellar Corp.*, 192 F.3d 546 (6th Cir. 1999) (salad makers did not engage in customarily "tipped" occupation and could not be included in tip pool where they had not personal contact with diners, labored outside diners' view, and performed duties traditionally classified as food preparation or kitchen support); *In re Tandoor Rest.*, No. PR-82-85, slip op. at 3 (N.Y. Dep't of Labor, I.B.A. Dec. 23, 1987) (holding it improper to include dishwashers and kitchen employees in tip pool under NYLL).

## C.     Allocation Formula

According to the Settlement Agreement, the FLSA Collective Members and the Rule 23 Class Members will be paid from the Settlement Fund, which shall be allocated between (1) damages under the NYLL for the Rule 23 Class consisting of disgorgement of money which plaintiffs contend was unlawfully diverted from the tip pool, and (2)

---

[1] Other individuals, including Nadilj ("Nick") Velic, Fatlum ("Lucky") Spahija, Eugene Bonateau, Ante Ivce, Salko Celija, Alaettin Sungu, Giuseppe Vetro, and Ibrahim Wakim, are excluded from receiving money from the supplemental tip pool for those years in which plaintiffs alleged they were improperly included in the tip pool.

damages under the FLSA for the FLSA opt-in plaintiffs, consisting of payment of the tip credit that was taken by Sparks, along with liquidated damages. The Settlement Fund will be allocated pursuant to a formula that takes into account the number of hours worked by each waiter during the FLSA and NYLL statute of limitations periods and the measures of damages available. (*See* Pechman Decl. Exhibit H.)

### D.     Attorneys' Fees and Litigation Costs

Consistent with the Settlement Agreement, Class Counsel moves to be paid, subject to Court approval, a sum of $1,015,000.00, which amount consists of a contingent fee equal to one third of the Settlement Fund, less $35,000.00 in service payments to certain plaintiffs (the "Service Payments"). Class Counsel does not seek separate reimbursement for its actual out of pocket litigation costs and expenses. By totaling the attorneys' fees and Service Payments as one third of the recovery, the Settlement Agreement comports with the general understanding of all plaintiffs that a third of the recovery is set aside for fees. In this regard, the one-third percentage is in accordance with Class Counsel's retainer agreements with the opt-in plaintiffs, and the understanding of all plaintiffs pursuant to the notices which were sent out to potential Collective and Rule 23 Class Members, which set forth Class Counsel's fee as one-third of any settlement or award obtained.

Through August 31, 2009, Class Counsel has expended over 1,823 hours prosecuting and negotiating the settlement of this matter and will continue to spend considerable billable time on this matter through its final resolution. (Pechman Decl. ¶ 39).

### E.     Service Payments

Under the Settlement Agreement, in addition to their individualized awards under the allocation formula, subject to Court approval, plaintiffs Gerald Duchene and

Ibrahim Wakim will each receive an additional payment of twenty-five thousand dollars ($25,000) and ten thousand dollars ($10,000) respectively, in recognition of the extraordinary services and considerable efforts rendered on behalf of the Rule 23 Class. (Pechman Decl. ¶ 51.)

## F.    Releases

The Settlement Agreement provides that Rule 23 Class Members will release their NYLL wage and hour claims.  In addition, all FLSA opt-in plaintiffs will release their claims under the FLSA.

## G.    Settlement Administration

### a.    Mailing

On July 9, 2009, Class Counsel mailed the Notice to all 201 Class Members, from a list of contact information initially provided by defendants, and updated by Class Counsel over the course of this litigation.  (Pechman Decl. ¶ 20.)  Of the 201 Notices that Class Counsel sent out, twenty-nine Notices were returned as undeliverable.  Class Counsel attempted to obtain possible current addresses from a locator service based on the social security numbers of the Rule 23 Class Members whose Notices were returned, and re-mailed the Notice to the addresses provided by the locator service, if any.  Class Counsel re-mailed approximately 22 Notices.  Class Counsel could not find current addresses for seven Class Members (whose combined shares of the Settlement total approximately $7,300), but will continue its efforts to locate these seven individuals. (Pechman Decl. ¶ 22.)

### b.    Results of the Mailing

Class Counsel has spoken to approximately seventy-five Rule 23 Class Members, most of whom came to the office of Class Counsel to review the methodology of

calculating the Settlement and to check their individual award for accuracy. (Pechman Decl. ¶ 23.)

Class Counsel received six objections to the Settlement, three of which have been withdrawn. Two of the remaining objections are from Mohamed Elbeyali and Jeton ("Jay") Karahoda, who were specifically excluded from the Rule 23 Class because they worked exclusively in the kitchen for the entire statute of limitations period. The third remaining objection is from Fatlum ("Lucky") Spahija, who was excluded from the Settlement for the years 2004 through 2008 because during that time his primary duties consisted of preparing and plating desserts at a dessert station hidden from the customers' view. Spahija received weekly compensation of $250 per week from defendants above and beyond his hourly wage and tips in exchange for performing these special duties. (*See* Affidavit of Rami Maher ("Maher Aff.") ¶ 14, Pechman Decl. Exhibit K.)

Over the course of meeting with Rule 23 Class Members throughout the objection period, a few errors in the calculation of hours for certain Class Members were discovered and resolved with counsel for defendants. In general, the Class Members were enthusiastic in their support for the Settlement and grateful that the Lawsuit was prosecuted on their behalf. (*See* Affidavit of Carlos Ponce ("Ponce Aff.") ¶ 7, Pechman Decl. Exhibit L.)

## ARGUMENT

### THIS COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

**A.    The Settlement Should Be Approved in All Respects**

Rule 23(e) requires court approval for any settlement of a class action to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P.

23(e).  Courts examine the "negotiating process leading up to the settlement as well as the settlement's substantive terms," in light of "the judicial policy favor[ing] the settlement of class actions."  *Gilliam v. Addicts Rehab. Ctr. Fund.*, No. 05-CV-3452, 2008 U.S. Dist. LEXIS 23016, at *9 (S.D.N.Y. Mar. 24, 2008).  In the Second Circuit, courts examine both procedural and substantive fairness with the understanding that there is a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quotations omitted).  The approval of a proposed class action settlement is a matter of discretion for the trial court.  *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998).  In exercising this discretion, however, courts should give "proper deference to the private consensual decision of the parties."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988).

**B.      Procedural Fairness Considerations Support Approving This Settlement**

A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery."  *Wal-Mart Stores, Inc.*, 396 F.3d at 116 (quoting *Manual for Complex Litigation, Third*, § 30.42 (1995)).  If the settlement was achieved through experienced counsels' arm's-length negotiations, a court "should be hesitant to substitute its judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007); *In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 U.S. Dist. LEXIS 58106, at **10-11 (S.D.N.Y. July 31, 2008) (noting that "a settlement represents an exercise of judgment by the negotiating parties and that, while a court should not give rubber stamp approval to a proposed settlement, it must stop short of the detailed and thorough investigation that it would undertake if it were actually

trying the case") (internal quotations and citations omitted).

Here, the Settlement was reached between the parties after discovery and extensive negotiations between the parties. This included numerous meetings and telephone conferences between Class Counsel and defendants' counsel, as well as a settlement conference before Magistrate Judge Gorenstein. As the parties continued to move toward a resolution in this matter, they consulted with wage and hour expert Norman Bromberg to assist in reaching a settlement. Mr. Bromberg, a former District Director of the U.S Department of Labor's Wage an Hour Division, New York District Office, was chosen by the parties because of his nearly thirty years of service with the U.S. Department of Labor and previous service as an expert witness in federal lawsuits. Mr. Bromberg conducted a detailed and thorough evaluation of the parties' respective positions, stating outright which claims he felt were strong and which claims had no chance of success. *See* Affidavit of Norman Bromberg, Pechman Decl. Exhibit G.

Given counsels' expertise in wage and hour cases, the extent of judicial involvement, and the use of a third-party neutral expert, the Settlement Agreement ultimately reached here by the parties handily meets the procedural fairness standard. *See Gilliam*, 2008 U.S. Dist. LEXIS 23016 at *4 (holding that the court's extensive involvement with the settlement discussions leads to a finding of procedural fairness).

### a. The Settlement is Fair, Reasonable, and Adequate

In evaluating the substantive fairness of a class action settlement, courts in the Second Circuit consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining

the class action through the trial; (7) the ability of the defendants to withstand a greater

judgment; (8) the range of reasonableness of the settlement fund in light of the best

possible recovery; and (9) the range of reasonableness of the settlement fund to a

possible recovery in light of all the attendant risks of litigation. *Grinnell,* 495 F.2d at 463.

Here, all of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement.

### i.     Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1)

By reaching a favorable settlement prior to dispositive motions or trial, plaintiffs

seek to avoid significant expense and delay, and instead ensure recovery for the Rule 23

Class. "Most class actions are inherently complex and settlement avoids the costs,

delays and multitude of other problems associated with them." *In re Austrian & German*

*Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000). This case is no exception,

as there are 201 Rule 23 Class Members and claims have been brought under both

federal and state statutes.

Although the parties have already undertaken considerable expense in litigating

this matter, further litigation without settlement would necessarily result in additional

expense and delay. Additional discovery would be required to establish liability and

damages. A complicated trial would be necessary, featuring extensive testimony by

defendants, plaintiffs, and numerous class members, in addition to expert testimony.

Preparing and putting on evidence on the complex factual and legal issues at such a

trial would consume tremendous amounts of time and resources for both sides, as well

as require substantial judicial resources to adjudicate the parties' disputes. A trial of the

damages issues, even on a representative basis, would be costly and would further

defer closure. Any judgment would likely be appealed, thereby extending the duration

of the litigation. This Settlement, on the other hand, makes monetary relief available to

Rule 23 Class Members in a prompt and efficient manner.  Therefore, the first *Grinnell* factor weighs in favor of final approval.

### ii. The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Dale Global Techs. Corp.*, 186 F. Supp. 2d 358, 362-63 (S.D.N.Y. 2002).  The overwhelming majority of the Rule 23 Class Members has shown an enthusiastic response and is eagerly awaiting the finalization of the Settlement.  Many of the Rule 23 Class Members have informed us that they are in financial difficulties and that the Settlement could not come at a better time.  (Pechman Aff. ¶ 29.)  They have been supportive of the transparency of the allocation formula and have been delighted at the amount of the Settlement.  The Class actively supports the results achieved on its behalf.

The only objections to the Settlement are by individuals who do not belong to the Rule 23 Class or who want a bigger share of the pie.  Out of 201 Notices sent to the Class, there have been six objections filed, three of which have been withdrawn.  These objections should have no bearing on the reasonableness of the Settlement because they consist only of claims for larger distributions to specific individuals, not of claims that the Settlement itself is inherently unreasonable or unjust.

This favorable reception by the Class constitutes "strong evidence" of the fairness of the proposed Settlement and supports judicial approval. *See RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94 Civ. 5587, 2003 U.S. Dist. LEXIS 8239, at *4 (S.D.N.Y. May 15, 2003) ("The lack of class member objections . . . may itself be taken as evidencing the fairness of a settlement") (quoting *Ross v. A.H. Robbins, Inc.*, 700 F. Supp. 682, 684 (S.D.N.Y. 1988)); *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) (only thirteen objections out of class of 3,500 is a "strong indication" of fairness).

### iii. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)

Although preparing this case through trial would require significantly more hours of discovery work for both sides, the parties have completed enough discovery to recommend settlement. "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176. The parties' discovery here meets this standard as it was "an aggressive effort" to litigate the case. The parties engaged in extensive formal and informal discovery, including depositions, before agreeing to resolve this case. In fact, by the time the Settlement was reached, Class Counsel had already begun preparing a motion for summary judgment based on the facts uncovered in the course of discovery.

In addition, the parties have submitted and vigorously contested a key motion pertaining to the critical issues in this case, namely plaintiffs' motion for class certification. Such motion practice along with the discovery completed provided the parties with ample opportunity to familiarize themselves with the merits of their positions. Such knowledge of the "strengths and weaknesses of their cases" supports a finding that the Settlement Agreement reached in this matter is the result of fair and reasonable negotiation. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 185 (W.D.N.Y. 2005) (holding that when counsel understands the "strengths and weaknesses of their cases" through extensive discovery, this knowledge supports final approval).

### iv. Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)

Plaintiffs believe their case is strong, however, it is also subject to considerable risk as to liability and damages. In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class

against the relief offered by the settlement." *In re Austrian*, 80 F. Supp. 2d at 177 (internal quotations omitted). Defendants have asserted a panoply of defenses to liability. In light of the defenses available to defendants and the fact-intensive nature of proving liability under the FLSA and NYLL, a jury trial on the merits could pose substantial risk to plaintiffs as to both liability and damages.

Plaintiffs are confident that they could ultimately establish defendants' liability, but this would require significant factual development. Moreover, the lion's share of evidence would be by verbal testimony rather than documentary evidence, making it more likely that a jury could see the case differently than the way plaintiffs see the case. In this regard, the Second Circuit has noted that, regardless of the perceived strength of plaintiffs' case, liability is "no sure thing." *Wal-Mart*, 396 F.3d at 118.

While plaintiffs believe that their claims are meritorious, Class Counsel is experienced and realistic, and understands that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed Settlement alleviates this uncertainty. This factor weighs heavily in favor of approval.

### v. Establishing a Class And Maintaining It Through Trial (*Grinnell* Factor 6)

This factor is not an issue as on June 18, 2007, the Court certified the Rule 23 Class.

### vi. Defendants' Ability to Withstand a Greater Judgment is Not Clear (*Grinnell* Factor 7)

Defendants' ability to withstand a greater judgment is presenting doubt. Defendants are facing financial stress, like other high-end restaurants, in the wake of the current financial crisis. (Pechman Decl. ¶ 46.) *See also* Katy McLaughlin, *Prime Time for Steak Lovers*, The Wall Street Journal, July 15, 2009 at D1 ("[T]his year, high-end steak

houses, which depend largely on expense-account dining, have suffered single- and double-digit declines in same-store sales…"); Lisa Fickenscher, *Recession Makes a Meal of City's Top Restaurants*, available at crainsnewyork.com/article/20090426/SMALLBIZ/30469967, Apr. 26, 2009 ("Now some of the city's biggest and best-known restaurant operators are running out of tricks—and money."); Frank Bruni, *Recession Makes Restaurants Eager to Serve You*, N.Y. Times, Feb. 4, 2009 at D1 ("Fewer restaurants are filling up every night and more tables are going empty. According to Technomic, a Chicago-based research and consulting firm, fine-dining revenues could fall by 12 to 15 percent in 2009.").

Rule 23 Class Members still employed by Sparks have noted a decline in business in the restaurant, as has become typical of most high-end restaurants this year. (Pechman Decl. ¶ 46.) Even if defendants could withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9).

### vii. The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)

Defendants have agreed to settle this case for a substantial amount, $3.15 million. There are 201 members of the Rule 23 Class. The resulting average per-class member settlement amount is approximately $15,671. Notably, the range of settlement in this case compares favorably to similar tip-share cases against other high-end New York City restaurants. *See, e.g.*, *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06-CV-4270 (PAC), 2009 U.S. Dist. LEXIS 27899 (S.D.N.Y. Mar. 31, 2009) (average per-class member settlement of $6,478); *Reyes v. Buddha-Bar NYC*, No. 08-CV-2494(DF), 2009 U.S. Dist. LEXIS 45277 (S.D.N.Y. May 28, 2009) (average per-class member settlement of

$2,028); *Webster v. Smithfield Assocs., LLC d/b/a Pastis Restaurant, et al.*, 08 Civ. 166 (LTS) (S.D.N.Y. Mar. 9, 2009) (average per-class member settlement of $1,258); *Agofonova v. Nobu Corp.*, 07 Civ. 6926 (DAB) (S.D.N.Y. Feb. 6, 2009) (average per-class member settlement of $3,300).

Although recovery could potentially increase slightly if plaintiffs succeeded on all claims at trial and survived an appeal, the $3.15 million settlement represents a very good deal for plaintiffs given the attendant risks of litigation. Plaintiffs and the Rule 23 Class are getting full value for most of their claims and partial value for the claims that have been determined to be weaker and have a lower possibility of success. Given that Mr. Bromberg has concluded that "the settlement fully and fairly reimburses the Rule 23 Class Members and opt-in plaintiffs for the money they are reasonably owed," there can be little dispute that the Settlement amount is reasonable. *See* Bromberg Affidavit, Pechman Decl. Exhibit G. As the Second Circuit has noted, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2. *See also Frank*, 228 F.R.D. at 186 (the determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'") (quoting *In re Austrian*, 80 F. Supp. 2d at 178).

Moreover, the Settlement provides the benefit of immediate substantial payment to Class Members, rather than some "speculative payment of a hypothetically larger amount years down the road." *Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, No. 01-CV-11814 (MP), 2004 U.S. Dist LEXIS 8608, at *16 (S.D.N.Y. May 14, 2004). The Rule 23 Class Members have already been waiting more than three years for a resolution of their claims. In light of the financial difficulties many of them are reporting, they are eager for an immediate and certain recovery.

The *Grinnell* factors all weigh in favor of issuing final approval of the Settlement Agreement. Because the Settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000), the Court should grant final approval.

**b.    The Filed Objections Should Have No Effect on the Court's Grant of Final Approval**

Class Counsel received six objections to the Settlement, all of which were submitted by individuals whose participation in the tip pool formed the basis for plaintiffs' claims against defendants (the "Objectors"). Three of the objections (by Ante Ivce, Salko Celija, and Eugene Bonateau) were subsequently withdrawn. Only objections filed by Mohamed Elbeyali, Jeton Karahoda, and Fatlum Spahija remain.

No Objector has objected to the reasonableness or fairness of the Settlement. Rather, the Objectors complain about their own exclusion from the Rule 23 Class for all or part of the period from June 14, 2000 through December 31, 2008 that is covered by the Settlement (the "Class Period") in which they were performing non-tipped functions. In this regard, the parties' determination was guided by Norman Bromberg's evaluation of the merits of plaintiffs' claims:

> I first addressed the allegation that Sparks allowed kitchen "waiters" and the dessert "waiter" to share in the waiters' tip pool. As I understood it, these kitchen waiters' primary function was to be in the kitchen plating food (*i.e.* salads, hot appetizers, and desserts), making their duties primarily production-related. Likewise, the primary function of the dessert "waiter" was to plate desserts in an area separated from the dining room. This is true whether the waiters always were stationed in the kitchen or whether the waiters served in this role on a rotating basis. In my opinion, defendants would have a very difficult time defending the participation of these kitchen and dessert "waiters" in the waiters' tip pool.

Affidavit of Norman Bromberg ¶ 7, Pechman Decl. Exhibit G.

Notably, the objections of Elbeyali and Karahoda concede that they had a role in the kitchen. In a letter to Class Counsel dated June 2, 2009 and attached to his objection to the Settlement, Elbeyali stated, "**I worked as an appetizer expediter** while doing waiters (Runners) jobs…**The end result is that they saved a salary that would be paid to a chef**." (Emphasis added.) Likewise, Karahoda also admitted in his objection that he "was hired as a waiter and then **put to work in the kitchen as a 'KITCHEN WAITER,'**" whereupon he performed the role of expediter. Indeed, Karahoda takes pride in the critical role he played in the kitchen at Sparks preparing the salads and appetizers:

> [W]hen I arrived in Sparks steak house there where number of waiters preparing the salads, however shortly afterwards there was a revision … The new changes that were implemented resulted in a reduction from four to two waiters positioned in the kitchen, with the final staff being my partner and I…. Having a great capacity of seating and having two or three seating over the period of one night brings **tremendous task of preparing over 1000 cold salads and appetizers for such tremendous crowds, and when I tell you that my particular tasks where two thirds of all cold salads it is not a small task**, more to that is that over a decade of performing those duties very few persons have been able to replace the efficiency, speed, consistency, preparedness, attention to detail and the ability to correct certain inevitable mistakes occurring daily that I have been able to consistently provide.

Karahoda Objection (emphasis added.)

Although it is understandable that the Objectors would each like a greater cut of the Settlement, Class Counsel believes that the distribution of the Settlement is fair and supported by the evidence uncovered throughout the litigation of this matter, including Karahoda's and Elbeyali's own descriptions of their duties at Sparks. In this regard, courts routinely approve distribution plans which are "recommended by experienced and competent class counsel." *In re Renaissancere Holdings Secs. Litig.*, 2008 U.S. Dist. LEXIS 3652, *7 (S.D.N.Y. Jan. 18, 2008). Courts give "great weight" to plaintiffs'

lawyers' conclusions that allocation formulas are fair and reasonable. *In re Vecco Instruments Secs. Litig.*, 05 MDL 01695, 2007 U.S. Dist. LEXIS 85629, at *39 (S.D.N.Y. Nov. 7, 2007). *See also In re EVCI*, 2007 U.S. Dist. LEXIS 57918 at *32 ("In determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel.")[2]

### a. The Objectors Already Received the Tips Which Form the Basis of the Disgorgement Pool

Objectors Karahoda, Elbeyali, and Spahija simply have not come to grips with the fact that the Lawsuit complains about **their** participation in the tip pool. It is the tips that **they** received that the Rule 23 Class wants back. The original Complaint stated:

> a. **Hot/Cold Appetizer Expediters:** Three staff members, currently "Salko," "Jay," and "Mohammed," are responsible for preparing salads and appetizers that are subsequently brought out to the customers' tables by the waiters. All three remain stationed in the kitchen away from customers' view, and do not take orders from customers.
> …
> c. **Dessert Station Chef:** The dessert station chef, currently "Lucky," is responsible for managing the dessert station, which includes preparing desserts at a separate station completely out of the customers' view, as well as assigning the preparation of desserts to his assistant. The dessert station chef wears a chef's uniform, and is also responsible for ordering desserts from outside contractors. The dessert station chef does not have any interaction with customers, and does not leave the dessert station area during shifts.

Complaint ¶ 30, Pechman Decl. Exhibit A.

Indeed, the basis of the disgorgement pool was the participation of these very individuals in the tip pool:

---

[2] Courts have also recognized that "the apportionment of a settlement can never be tailored to the rights of each plaintiff with mathematical precision." *In re Painewebber Ltd. Pshps. Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997). In a class action settlement, some individuals "may receive too much, some may receive too little, … but the goal here is fairness, not perfection which cannot be achieved." *McClendon v. Continental Grp. Inc.*, 802 F. Supp. 1216, 122 (D.N.M. 1992).

> [D]efendants have agreed to disgorgement of the value of
> the tips allotted to the kitchen and dessert waiters who were
> alleged to be improperly in the tip pool from 2000 through
> 2006. For 2007 and 2008, the full value of the tips allotted to
> the dessert "waiter" has been disgorged. However, because
> Sparks took steps in 2007 and 2008 to assign the other
> kitchen waiters duties that included the performance of
> more service-related functions, the parties have agreed that
> approximately two-thirds of their tips will be disgorged for
> those two years.

Bromberg Affidavit ¶ 13, Pechman Decl. Exhibit G.

Here, there is no serious dispute that Karahoda, Mohamed, and Spahija were not functioning as tipped employees. According to former General Manager Rami Maher, "Mohamed and Jay were fixtures in the kitchen. Although Jay and Mohamed performed 'side jobs' like other waiters, these were all incidental to food preparation (*e.g.*, cutting lemons and tomatoes), and these side jobs *did not* involve customer service." Maher Aff. ¶ 9, Pechman Decl. Exhibit K. Likewise, one of the plaintiffs noted, "Jeton ('Jay') Karahoda and Mohamed Elbeyali, however, were always steady in the kitchen. Jay was the 'salad man' and Mohamed was the 'hot appetizer' expediter. In fact, during his shift Jay used rubber gloves when he mixed the salads and often wore an apron." Ponce Aff. ¶ 4, Pechman Decl. Exhibit L.

Like Karahoda and Elbeyali, Spahija's duties centered primarily upon food production. Maher personally promoted Spahija from waiter to pastry chef:

> Lucky began at Sparks as a table waiter, but there came a
> point at which he no longer served as a table waiter and
> instead specialized in desserts. He made this transition
> because he was good at and enjoyed dessert preparation. I
> required Lucky to wear a chef's uniform consisting of an
> apron, a chef's coat, black pants and a white hair band...[I]n
> fact, we had the waiters refer to him as "Chef Lucky."

Maher Aff. ¶ 11, Pechman Decl. Exhibit K.

This description is corroborated by class member Carlos Ponce, who observed that between 2004 and 2008 he "never saw Lucky come out of the dessert station, which was in a separate room next to the kitchen, to serve a customer. As there were hundreds of dessert orders coming in each night, Lucky stayed in this separate room and prepared various cakes, pastries, and sauces, which he then put on a cart for others to pick up and bring to customers' tables." Ponce Aff. ¶ 6, Pechman Decl. Exhibit L. In addition, Lucky never had to stay late to close the restaurant, and left by eleven p.m. every night, whereas other waiters would have to stay as late as one thirty a.m. *Id.*

### b. Elbeyali and Karahoda Have No Standing to Object to the Settlement and Do Not Release Their Claims

Because Objectors Elbeyali and Karahoda are not members of the Rule 23 Class, they have no standing to object to the reasonableness or fairness of the Settlement. *See Central States Southeast & Southwest Areas Health & Welfare Fund*, 504 F.3d 229, 238 (2d Cir. 2007) ("Non-parties to a settlement generally do not have standing to object to a settlement of a class action.") (quoting *Newberg on Class Actions* § 13:69 (4th ed. 2002)); *Mayfield v. Barr*, 985 F.2d 1090 (D.C. Cir. 1993) (holding "[t]hose who are not class members, because they are outside the definition of the class or have opted out" lack standing to object to class settlement); *In re Drexel Burnham Lambert Group, Inc.*, 130 B.R. 910, 923 & n.8 (S.D.N.Y. 1991) ("Objectors who are non-Class members lack standing to object to the fairness, reasonableness and adequacy of the Settlement.")

"The failure of a settlement to compensate non-members of the class is not a ground for rejection of the settlement." *In re Sony SXRD Rear Projection Television Class Action Litigation*, No. 06 Civ. 5173, 2008 U.S. Dist. LEXIS 36093, at *28 (S.D.N.Y. May 1, 2008). Because they are not members of the Rule 23 Class, any NYLL claims that Elbeyali and Karahoda may have against defendants are not released by the Settlement

Agreement.[3]  Thus, "because [the Objectors'] rights against [defendants] would not be impaired by the disposition of this action, [their] intervention would serve no purpose." *Central States Southeast & Southwest Areas Health & Welfare Fund*, 504 F.3d at 244.

Moreover, since Objectors Elbeyali and Karahoda are not releasing any NYLL claims against Sparks, they are free to bring separate lawsuits on their own behalf.

### c.  The Objectors' Claims Are Not Typical of Other Members of the Rule 23 Class

The Objectors' do not belong in the Class because their claims are not "typical" as required by Fed. R. Civ. P. 23(a)(3), inasmuch as the Class is complaining about the Objectors' participation in the tip pool.  The Settlement is intended to resolve Rule 23 Class Members' claims under the NYLL for tips that were wrongly diverted to defendants' employees who were not members of the waitstaff, namely, the Objectors. Because the Objectors have already received these tips, their interest in the Settlement is necessarily in irreconcilable conflict with those of the Rule 23 Class and cannot coexist. The Objectors inexplicably claim they are entitled to money from defendants, but under the legal theory of the Lawsuit it is clear that they cannot claim any legal right to reimbursement for misappropriated tips which they themselves received.

### c.  The Settlement Contains No Obvious Deficiencies

The Settlement has no obvious deficiencies.  The Settlement does not mandate excessive compensation for Class Counsel but rather calls for an award of attorneys' fees, equal to one third of the Settlement Fund (less Service Payments).  This is the percentage agreed to by the opt-in plaintiffs and the percentage that was disclosed by Court Notice to all Rule 23 Class Members.  In addition, the Settlement provides Service

[3] Elbeyali did opt in to the FLSA Collective and is receiving $16,779.26 from the FLSA settlement under the theory that he improperly received a reduced minimum wage as a "tipped employee" even though, as an expediter, he was not a "tipped employee."

Payments for two plaintiffs in this lawsuit who were instrumental in facilitating the prosecution and resolution of this matter, in a total amount not to exceed $35,000. This amount is reasonable in light of the overall benefit conferred on the Settlement Class and their significant efforts.

**THE COURT SHOULD APPROVE
THE FLSA SETTLEMENT**

Because plaintiffs' FLSA claims are distinct from the NYLL wage and hour law claims they bring under Rule 23, plaintiffs seek approval of the settlement of the FLSA claims separately. The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as a Rule 23 settlement. *See Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 263 (S.D.N.Y. 1997) (FLSA collective actions differ from Rule 23 class actions in that FLSA "opt in" proceedings need not strictly observe due process rights necessary to protect absent class members); *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984) (FLSA collective actions do not implicate the same due process concerns as Rule 23 actions because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date").

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Id.* at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the Court should approve the settlement. *Id.* at 1354.

In this case, the Settlement was the result of vigorously contested litigation. Recognizing the uncertain legal and factual issues involved, the parties engaged in

mediation with a wage and hour expert and, after several rounds of negotiation, ultimately reached the Settlement pending before the Court. During the litigation, plaintiffs and defendants were both represented by counsel. The Settlement was the result of arm's-length negotiations. Moreover, the FLSA Collective plaintiffs will be receiving the full value of the tip credit which was taken for the statutory period, plus liquidated damages (less attorneys' fees). Therefore, because the Settlement provides full relief and was reached based on reasonable compromise in a contested litigation, the Court should approve the FLSA settlement.

## CLASS COUNSEL'S ATTORNEYS' FEES
## SHOULD BE APPROVED

"Under the common fund doctrine, a party that secured a fund for the benefit of others, in addition to himself, may recover his costs, including his attorney's fees from the fund itself or directly from the other parties enjoying the benefit." *Farinella v. Paypal, Inc.*, 611 F. Supp. 2d 250, 269 (E.D.N.Y. 2009) (quoting *In re Holocaust Victim Assets Litig.*, 424 F.3d 150, 157 (2d Cir. 2005)). "Fees and expenses are paid from the common fund so that all class members contribute equally towards the costs associated with litigation pursued on their behalf." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (S.D.N.Y. 2008). The award of attorneys' fees has the three-fold benefit of: (1) providing just compensation; (2) encouraging skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons; and (3) discouraging future misconduct of a similar nature. *Id.* In this case, the Settlement Agreement as well as the retainers and Consents to Sue signed by the plaintiffs authorized Class Counsel to receive one-third of the Settlement as attorneys' fees.

It has been the trend in the Second Circuit to determine an award of attorneys' fees in cases like this one based on the "percentage of recovery" method whereby the

Court awards a percentage of the common fund as attorneys' fees.  *See, e.g., Mohney*, 2009 U.S. Dist. LEXIS 27899 at *16; *Hicks v. Morgan Stanley & Co.*, 2005 U.S. Dist. LEXIS 24890, at *22 (S.D.N.Y. Oct. 24, 2005) ("The trend in the Second Circuit recently has been to use the percentage method.").  This approach has recently been favored over the lodestar method (multiplying the number of hours reasonably billed to the class by a reasonable hourly rate, then applying a multiplier based on more subjective factors), which the Second Circuit has recognized as an alternative.  *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47, 50 (2d Cir. 2000).  Under either method, the purpose is to award a "reasonable" amount, as determined by the district court's "sound discretion."  *Id.*  This is because the percentage method "reduces the incentive for counsel to drag the case out to increase the number of hours billed; also fewer judicial resources will be spent in evaluating the fairness of the fee petition."  *Id.* at *23.  *See also Wal-Mart*, 396 F.3d 96, 122 (2d Cir. 2005) (recognizing that amongst its problems, a strict lodestar approach "creates an unanticipated disincentive to early settlements [and] tempt[s] lawyers to run up their hours") (internal quotation omitted).  "In addition the percentage method is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients."  *Strougo v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003).

However, "[t]he lodestar remains useful as a baseline even if the percentage method is eventually chosen."  *Hicks*, 2005 U.S. Dist. LEXIS 24890 at *23 (quoting *Goldberger*, 209 F.3d at 50).  "The Second Circuit encourages the practice of performing a lodestar 'cross-check' on the reasonableness of a fee award based on the percentage approach."  *In re EVCI*, 2007 U.S. Dist. LEXIS 57918 at *53.  *See also Strougo*, 258 F. Supp. 2d at 263 (same).

a.	**Class Counsel's Requested Percentage As a Fee Award Is Reasonable When Compared to the Lodestar**

Class Counsel seeks an award of one-third of the Settlement (less the $35,000 in Service Payments) for attorneys' fees and costs.  This request is consistent with the retainer agreements Class Counsel has with plaintiffs, as well as the Notices sent to the Rule 23 Class and the FLSA Collective when the Court certified this case as a collective action and as a class action.  In this regard, the fee agreed upon by plaintiffs may "offer the best indication of a market rate."  *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008).  Class Counsel will pay all incurred costs and expenses from the portion of the fund that it is awarded; in other words, Class Counsel will not be seeking a separate award for costs.

Through August 2009, Class Counsel has already invested over $470,341.25[4] worth of time and expenses in obtaining a fair settlement for the Rule 23 Class.  (Pechman Decl. ¶ 41.)  Class Counsel now seeks one third of the settlement fund ($1,050,000) in attorneys' fees and Service Payments.  When crosschecked against the lodestar, this amounts to the application of a 2.2 multiplier.  This multiplier is modest, given that in the Second Circuit "multipliers of between 3 and 4.5 have become common."  *Wal-Mart Stores, Inc.*, 396 F.3d at 123 (affirming a multiplier of 3.5 for an attorneys' fee award) (quoting *NASDAQ Market-Makers,* 187 F.R.D. 465, 489 (S.D.N.Y. 1998)); *Agofonova v. Nobu Corp.*, 07 Civ. 6926 (DAB) (in FLSA/NYLL class action against restaurant, attorneys' fees of one third of settlement awarded, constituting 4.34 multiplier); *In re EVCI*, 2007 U.S. Dist. LEXIS 57918 at *56 n.7 ("Lodestar multipliers of

---

[4] *See* Pechman Decl. ¶ 41 (Chart of Berke-Weiss & Pechman billing rates).  Class Counsel's billing rates are consistent with "the hourly rate that is normally charged in the community [New York, New York] where counsel practices." *Strougo*, 258 F. Supp. 2d at 263. *See e.g. Rozell v. Courtney Ross-Holst*, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008) (in a New York employment case the Court found that the following were reasonable rates: partner -- $600; senior associate -- $350; junior associate -- $250; law clerk -- $175; paralegals -- $125).

nearly 5 have been deemed 'common' by courts in this District."); *Webster v. Smithfield Associates, LLC*, 08 Civ. 166 (LTS) (in FLSA/NYLL class action against restaurant, attorneys' fees of one third of settlement awarded, constituting 3.3 multiplier).

**b. The *Goldberger* Factors**

Regardless of whether the percentage or lodestar method is used, courts consider: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation; (4) quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *See Goldberger*, 209 F.3d at 50.

**i.      Counsel's Time and Labor**

The first factor examines the time and labor expended by counsel in achieving the Settlement.  Here, Class Counsel conducted extensive investigation and prosecution of this case for more than two years before the parties' focus turned toward settlement. *See* Pechman Decl. ¶ 10.  The time invested in obtaining discovery and crafting the plaintiffs' case in anticipation of trial was a reasonable expenditure of Class Counsel's time. *See, e.g., Maley*, 186 F. Supp. 2d at 371-372 (finding that investigation into the case, briefing of court documents, court appearances, and participation in settlement negotiation amounted to a reasonable expenditure of time).

Throughout the course of this litigation, Class Counsel made hundreds of calls to plaintiffs regarding the facts underlying the case, and responded to hundreds more calls and emails regarding the case.  By the time of settlement, Class Counsel represented 201 current and former employees of Sparks. A number of plaintiffs had Louis Pechman's cell phone number for after-hours access. *See* Pechman Decl. ¶ 39. Pechman was available around the clock and on weekends to accommodate the plaintiffs' work schedules, and the plaintiffs used this resource frequently.  *Id.*  Through

this constant contact with the plaintiffs, Class Counsel kept the plaintiffs informed and involved in the action. *Id. See also Banyai v. Mazur*, 2007 U.S. Dist. LEXIS 25272, at *12 (S.D.N.Y. Mar. 30, 2007) (noting that Class Counsel "spent time communicating with members of the Class").

In its representation of the Rule 23 Class, Class Counsel expended over 1823 attorney hours and over 285 paralegal and intern hours in this case. *See* Pechman Decl. ¶39.[5] Further, Class Counsel has ongoing duties in administering the Settlement which will require additional professional time. *Id.* Class Counsel has been able to keep the expenses and number of attorney hours fairly low by litigating this action in an efficient and cost-effective manner, and by maintaining a professional working relationship with defense counsel which resulted in less time spent bickering over discovery and other disputes. Class Counsel worked to limit the duplication of effort and assigned work to the lowest-billing timekeepers (often, paralegals or law students) wherever feasible. *See, e.g., In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004) (praising counsel's efforts to run "the case in a coordinated and well-organized fashion to ensure efficiency and minimize unnecessary duplication of work.").

### ii.     The Litigation's Magnitude and Complexity

The case presented an overlapping series of legal and factual issues under the FLSA and NYLL. There is a lack of Second Circuit and New York State Court of Appeals authority on some of the tip pool issues presented in this case. Given the vagueness in the law, the lack of definitive regulations regarding tip pool participation, and the sharply disputed factual issues regarding the duties of individuals who were alleged to be ineligible for participation in the tip pool, there was a rather high complexity to this case.

---

[5] BWP's contemporaneous time records are available for the Court's review.

As far as factual testimony is concerned, this case spans eight years, two hundred waiters, and several positions alleged to be ineligible for participation in the tip pool. As such, the magnitude of this case is also at the high end of similar wage and hour cases against restaurants.

### iii.     The Risks of Litigation

"Courts of this Circuit have recognized the risk of litigation to be perhaps the foremost factor to be considered in determining the award of appropriate attorneys' fees." *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 U.S. Dist. LEXIS 9144, at *30 (S.D.N.Y. Jan. 31, 2007) (internal quotations and citation omitted).  Class Counsel took this case pursuant to retainer agreements with the named plaintiffs which stated that Counsel would receive one third of the recovery *only if* plaintiffs obtained a recovery. Had plaintiffs failed to recover on their claims, Class Counsel would have received no payment for their work.  While Class Counsel believed strongly in this case from the start, a successful resolution was far from assured.  Defendants asserted a panoply of challenges to plaintiffs' claims, and it was impossible to foresee which, if any, may have succeeded at trial.  Moreover, compared to other wage and hour cases which often rely on payroll and time records, liability in this case would have to be proven primarily through oral testimony rather than documentation.  Given that the statutory claim period in this case extends back more than nine years, the risk that memories would blur together and cause confusion during testimony is a very real concern.

No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who had agreed in advance to pay for his services, regardless of success.  Nor, particularly in complicated cases producing large recoveries, is it just to determine a fee dependent solely on the reasonable amount of time expended.  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 592

(quoting *Grinnell* 495 F.2d at 470.) This case is rife with mixed questions of fact and law. For example, it is a close question of law whether a Banquet Manager or a Wine Steward who has some managerial responsibilities but also spends some time interacting with customers can be in a tip pool. Additionally, some of the damages in this case would need to be established by testimony. *See In re Vecco Instruments Secs. Litig.*, 2007 U.S. Dist. LEXIS 85554 at *29-30 (identifying the difficulty in proving damages based upon testimony).

### iv. Quality of the Representation

Class Counsel has extensive experience representing workers in wage-hour class and collective actions and other employment law actions, *see* Pechman Decl. ¶¶ 30-34, and used this experience to get to the heart of the issues with defense counsel and to obtain an excellent result for the Rule 23 Class. *In re Priceline.com, Inc. Secs. Litig.*, No. #:00-CV-1884 (AVC), 2007 U.S. Dist. LEXIS 52538, at *15 (D. Conn. July 20, 2007) ("The quality of representation here is demonstrated, in part, by the result achieved by the class.") This is confirmed by the enormously positive response to the settlement. *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 593 ("The overwhelmingly positive reaction of the Class to the Settlement further demonstrates that Plaintiffs' Counsel have generated an excellent result.") Indeed, no Rule 23 Class Member objected to the attorneys' fees, a "reaction . . . [which] is entitled to great weight by the Court." *Maley*, 186 F. Supp. 2d at 374 (where the notice clearly set forth that class counsel would seek 33 1/3% and there was no objection by the class, it is a testament "to the approval of the Class with respect to the Settlement and the fee and expense application.")

In addition, "[t]he quality of opposing counsel is also important in evaluating the quality of Class Counsels' work." *In re KeySpan Corp. Sec. Litig.*, No. 01CV5852(ARR), 2005 WL 3093399, at *11 (E.D.N.Y. Sept. 30, 2005). Here, defendants are represented by

two excellent attorneys, William Carmell and Philip Davidoff, partners at Ford & Harrison LLP, who are experienced in defending wage and hour claims.

### v. The Fee Is Reasonable In Relation to the Settlement

In the Second Circuit, it is well settled that a fee award of one-third of a settlement is reasonable. Indeed, this Court recently held in a NYLL/FLSA case that "the amount of fees requested [33% of the $3,265,000 settlement fund] is fair and reasonable using the 'percentage-of-recovery' method, which is consistent with the 'trend in the Second Circuit.'" *Mohney*, 2009 U.S. Dist. LEXIS 27899 at *16 (citations omitted). *See also Gilliam*, 2008 U.S. Dist. LEXIS 23016, at *15 (awarding fees of 33.33% of the settlement fund of $12 million for fees and costs); *Stefaniak v. HSBC Bank USA, N.A.*, No. 05-CV-720, 2008 U.S. Dist. LEXIS 53872, at *9 (W.D.N.Y. June 28, 2008) (attorney's fees of 33% of $2,900,000 settlement amount approved in NYLL/FLSA case); *Maley*, 186 F. Supp. 2d at 367-68, 370 (awarding fees of 33 1/3% of the $11.5 million settlement fund plus costs and expenses and recognizing that courts in this Circuit have awarded fees as large as 50% of the settlement fund).

### vi. Public Policy Considerations

Both the FLSA and the NYLL are remedial statutes designed to protect employees in the payment of wages they earn. *See* 29 U.S.C. § 202(a); NYLL § 650. A fair attorneys' fee award (factoring in the services provided and the risks undertaken) furthers these remedial purposes. Moreover, awarding Class Counsel's requested fee encourages prompt and efficient resolution of class litigation. *Maley*, 186 F. Supp. 2d at 374 ("Private attorneys should be encouraged to take the risks required to represent those who would not otherwise be protected from socially undesirable activities . . .")

## THE SERVICE PAYMENTS
## SHOULD BE APPROVED

The Settlement Agreement provides for Service Payments to two key plaintiffs, Gerald Duchene and Ibrahim Wakim, who provided integral support to Class Counsel throughout the prosecution and settlement of the Lawsuit. Duchene and Wakim both put forth an enormous amount of time into assisting Class Counsel on behalf of the Rule 23 Class. Their efforts were done at great risk to their professional careers. Indeed, we believe that Duchene's ability to find work as a waiter was stymied by the publicity surrounding this case.

Under the Settlement Agreement, Duchene and Wakim would receive $25,000 and $10,000, respectively. In order to ensure the fairness of the Settlement to the other Class Members, this sum of $35,000 will be deducted from the one-third of the Settlement which Class Counsel would otherwise request as compensation for their representation. This ensures that the portion of the Settlement going directly to the plaintiffs and Rule 23 Class Members remains the two-third portion which they are expecting based on the various notices served on them throughout the course of the Lawsuit, as well as the plaintiffs' retainer agreements.

This Court recently stated "service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff." *Mohney*, 2009 U.S. Dist. LEXIS 27899 at *18 (approving aggregate incentive payment of $84,000 for fourteen plaintiffs in a wage and hour case under the FLSA); *see also Wright*, 553 F. Supp. 2d at 342 (approving $50,000 awards to each of 11 named plaintiffs in employment discrimination action); *Strougo*, 258 F. Supp. 2d at 264 (approving award of $15,000 for

class representative); *Glass v. UBS Financial Servs., Inc.*, No. C-06-4068MMC, 2007 U.S. Dist. LEXIS 8476, at *51 (N.D. Cal. Jan. 26, 2007) (finding award of $25,000 to each of four class representatives to be reasonable); *Fears v. Wilhelmina Model Agency, Inc.*, No. 02-Civ.4911, 2005 U.S. Dist. LEXIS 7961, at **9-10 (S.D.N.Y. May 5, 2005) (vacated on other grounds by 315 Fed. Appx. 333) (approving incentive payments ranging from $15,000 to $25,000 apiece to twelve plaintiffs and class representatives); *Sheppard v. Consolidated Edison Co. of New York, Inc.*, No. 94-CV-0403, 2002 U.S. Dist. LEXIS 16314, at *25-26 (E.D.N.Y. Aug. 1, 2002) (approving aggregate incentive payment of $119,167 for six named plaintiffs in a race discrimination class action).

## CONCLUSION

For the reasons set forth above, plaintiffs respectfully request that the Court (1) approve as fair and adequate the class-wide settlement of this action pursuant to Fed. R. Civ. P. 23, as set forth in the Settlement Agreement; (2) approve the FLSA settlement; (3) award Class Counsel's attorneys' fees; (4) approve the Service Payments requested; and (5) order Class Counsel to issue payments in accordance with the Settlement Agreement.

Dated: New York, New York
     September 2, 2009

BERKE-WEISS & PECHMAN LLP


By:           /s/              
                Louis Pechman (LP-6395)
                Jessica Tischler (JT-1582)
                488 Madison Avenue, 11th Floor
                New York, NY 10022
                (212) 583-9500
                *Attorneys for Plaintiffs*