UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GERALD DUCHENE, et al.,

      Plaintiffs,

 -against-

MICHAEL CETTA, INC., d/b/a SPARKS
STEAK HOUSE, and MICHAEL CETTA,

      Defendants.
------------------------------------------------------------X

06 Civ. 4576 (PAC) (GWG)

**AFFIDAVIT OF NORMAN BROMBERG**

**ECF CASE**

STATE OF NEW YORK  )
          ) ss:
COUNTY OF NEW YORK )

  NORMAN BROMBERG, being duly sworn, upon personal knowledge, deposes and says:

  1. This affidavit is submitted in response to the Objections of Mohamed Elbeyali, Jeton ("Jay") Karahoda, and Fatlum ("Lucky") Spahija. At the outset and for the reasons described below, I would like to state that there is nothing contained in the Objections which changes my original opinion or my recommendation that the terms of the settlement in this matter be approved.

  2. I will not be able to appear at the Fairness Hearing because I am having surgery September 8, 2009 and will be incapacitated for several days thereafter. In lieu of oral testimony at the Fairness Hearing, I hope this Affidavit will be of use to the Court in reaching its decision on plaintiffs' Motion for Final Approval of Settlement, Attorneys' Fees, and Service Payments.

1

3. In paragraph 7 of my May 11, 2009 affidavit I concluded as follows regarding the participation of certain individuals (including Mr. Elbeyali, Mr. Karahoda, and Mr. Spahija) in the tip pool:

> I first addressed the allegation that Sparks allowed kitchen "waiters" and the dessert "waiter" to share in the waiters' tip pool. As I understood it, these kitchen waiters' primary function was to be in the kitchen plating food (*i.e.* salads, hot appetizers, and desserts), making their duties primarily production-related. Likewise, the primary function of the dessert "waiter" was to plate desserts in an area separated from the dining room. This is true whether the waiters always were stationed in the kitchen or whether the waiters served in this role on a rotating basis. In my opinion, defendants would have a very difficult time defending the participation of these kitchen and dessert "waiters" in the waiters' tip pool.

4. As noted in paragraph 13 of my previous affidavit, the disgorgement pools were based on the alleged unlawful participation of the "kitchen waiters" and "dessert waiter" (which includes these Objectors) in the tip pool.

5. The Objections have not changed, but rather reinforce my original conclusions. In his own Objection, Mr. Karahoda concedes that he was "put to work in the kitchen as a 'Kitchen Waiter'" and then goes on to refer to himself as "a staff of the kitchen." Indeed, Mr. Karahoda puts an exclamation point on his role as a "kitchen waiter," describing in his Objection the "tremendous task of preparing over 1000 cold salads and appetizers" on busy nights at Sparks, of which he admits his particular tasks consisted of preparing "two thirds of all cold salads." Similarly, Mr. Elbeyali's Objection clearly states that he was "assigned to work on the hot/cold appetizers." With respect to Mr. Spahija's Objection, he states only that he believes he has "worked more hours than [he] was awarded" but does not complain about the methodology or fairness of the Settlement.

6. There is nothing contained in the Objections of Mr. Karahoda, Mr. Elbeyali, and Mr. Spahija which changes my original opinion contained in paragraph 21 of my prior affidavit:

> In my opinion and based on my experience, this settlement fully and fairly reimburses the Rule 23 Class Members and opt-in plaintiffs for the monies which they are reasonably owed (less attorneys' fees). Indeed, the settlement essentially returns all monies to the Class which were improperly withheld and returns the full amount of the tip credit taken to the opt-in plaintiffs, plus liquidated damages. For this reason, I believe that the Settlement Agreement strongly serves the legislative purposes underlying the FLSA and NYLL.

7. In my judgment, the terms and structure of the settlement are fair and reasonable. Therefore, it is my recommendation that the Court should give final approval to the parties' Settlement Agreement.

_____
NORMAN BROMBERG

Sworn to before me this
4th day of September 2009

_____
NOTARY PUBLIC

LOUIS PECHMAN
Notary Public, State of New York
No. 02PE5079601
Qualified in Nassau County
Commission Expires June 9, 2011

3